[No. 5902.]

THE PEOPLE EX REL. BAR ASSOCIATION v. JOHNSON.

1.  Attorneys-at-Law—Disbarment—Grounds.

The respondent, while district attorney, filed an information against a party on the strength of an affidavit filed with him charging a crime, but the accused was not arrested until after the expiration of respondent's term, at which time he requested the latter to defend him.  The respondent presented the entire matter to the trial court in the presence of the new district attorney, and the court entered an order authorizing him to defend the accused.  Held, that, while this is a practice which should not be engaged in, in the absence of any proof that respondent made use of any information which he had secured while in the employ of the state, it does not present a case justifying disbarment.—P. 462.

2.  Same—Attorney and Client—Charges Made by Client—Burden of Proof.

In a proceeding to disbar an attorney upon a charge made by a client, the burden is upon the latter to prove the former's guilt; and as accusations of this kind are easily made and difficult to defend, this court will not be quick to take the naked

charge as a proof of guilt, and, acting upon that, not only deprive a member of the bar of the means of making a livelihood, but disgrace him as well.—P. 464.

**3.  Attorneys-at-Law—Disbarment—Grounds.**

Respondent in a disbarment proceeding was employed by A. and S. to assist in prosecuting G. and M., charged with arson. Later V., one of respondent's former clients, was also charged with being implicated in the offense charged. Respondent talked with A. and S. concerning the charge, and each informed him that they did not believe V. had anything to do with the matter, and that they would have nothing to do with his prosecution; and, in addition, A. requested respondent to defend V. Respondent then informed the district attorney that he would not assist in prosecuting V., as he was an old friend and client. Before the trial, G. escaped, whereupon S. instructed respondent that he would have nothing further to do with the matter, and for him to dismiss the whole case. Upon the arraignment of V., respondent entered his appearance for him and tendered a plea of not guilty, and, upon motion of the district attorney, the cases against M. and V. were consolidated for trial. A few witnesses' were examined by the district attorney, but were not cross-examined, and the court directed a verdict of not guilty. The district attorney was cognizant of respondent's entire connection with the case, and made no objection to the latter's appearance for V. Held, that there was nothing culpable in the action of respondent, and his disbarment will be denied.—P. 465.

*Original Proceeding.*

Petition by the people, on the relation of The Colorado Bar Association, for the disbarment of Charles A. Johnson.                    *Petition denied.*

Decision *en banc.*

Mr. E. H. PARK, for petitioner.

Mr. TOM HERRINGTON and Mr. IRA C. ROTHGERBER, for respondent.

Mr. JUSTICE BAILEY delivered the opinion of the court:

This is a proceeding instituted for the purpose of disbarring respondent Charles A. Johnson. In

the charges preferred against respondent there are three specifications.

The first is that, while acting as district attorney of the sixth judicial district, he caused an information to be filed in the district court of Montezuma county wherein one August Thompson was charged with having committed the crime of arson; that after the expiration of his term of office he engaged to defend Thompson against the accusation contained in the information.

It appears from the testimony in this matter that Johnson was appointed in the spring of 1902 to the office of district attorney to fill a vacancy, and that he served as such district attorney until the succeeding election in the fall of 1902, when his successor was elected and qualified. Shortly after his appointment he obtained information that two men of the name of Belcher had burned a certain flour mill situate in the county of Montezuma, and caused them to be arrested, and at the November term of court he filed an information against them, charging them with the burning of this mill. After he had filed the information against the Belchers, the owners of the mill informed him that Adam Lewy knew that some other person had burned the mill. Lewy made an affidavit that Thompson had stated to him that he (Thompson) and certain other persons not named set fire to and burned the mill. On the strength of this affidavit respondent filed an information against Thompson. Thompson was not immediately arrested. The case against the Belchers was tried and one of them convicted and sentenced to the penitentiary. In the month of December, an election having taken place, the newly elected district attorney assumed the duties of the office. In April following it appears that Thompson was arrested and wrote to Johnson requesting him to appear in

his defense. Respondent stated to Thompson that, inasmuch as he had prepared the information, he was not certain whether he could appear for him or not; that, as he knew nothing about the facts of the case and had conferred with no witnesses other than Lewy, he would present the matter to the district court and take its advice. He did present the matter to the district court, and the judge concluded that there was no impropriety in his accepting this employment. He then accepted the employment, but the case was not tried at the April term of court. It was postponed until November and at the November term was dismissed by the district attorney because he was unable to secure any satisfactory proof of Thompson's guilt.

Inasmuch as respondent presented his connection with the case fully and frankly to the court in the presence of the district attorney, and the court entered an order authorizing and permitting him to enter his appearance for the defendant Thompson and to defend him, the district attorney making no objection thereto, we cannot see that respondent violated his oath of office or any of the duties which he owed to the state or to the profession as an attorney-at-law. While this is a practice which should not be engaged in and only permitted under very rare circumstances, we believe that where the trial court, having knowledge of all the circumstances, makes an order permitting counsel to defend one against whom the same counsel has prepared an information, and where the district attorney is cognizant of the making of such order and makes no objection thereto, in the absence of any proof showing that the attorney made use of any information which he had previously secured while in the employment of the state, it does not present a case which would justify us in disbarring counsel.

The second specification is that respondent informed the defendant Thompson that he might be able to secure the dismissal of the case upon payment of the costs, and for the purpose of paying the costs Thompson gave respondent the sum of fifty dollars; that respondent informed defendant Thompson that he had paid fifty-three dollars as costs in the case, while as a matter of fact he had paid no costs and there were none charged to the defendant. This the respondent denies. He admits receiving fifty dollars, but says that when the case was continued in April he informed the defendant that if it was necessary for the respondent to go from Durango, where he resided, to Cortez, the place of holding the court at the fall term, defendant would have to pay him seventy-five dollars in addition to the regular fee, this seventy-five dollars to pay for the expense of the trip and some little compensation for the extra time employed; that before going to Cortez at the fall term of court Thompson paid him fifty dollars for that purpose. Thompson is positive in his statement that the money was obtained for the purpose of paying the costs; respondent is equally positive that that was not true, but that it was paid as a matter of contract. Defendant Thompson states that the conversation leading up to the payment of the money and the payment of it occurred at Cortez just before the case was to come on for trial. Respondent says that it occurred in Durango before going to Cortez and that it was paid solely to reimburse respondent for his expense in making the trip and some additional compensation for his time.

The burden was upon the petitioner in this matter to prove the guilt of the respondent. It has not done so. The circumstances of the transaction seem rather to support the testimony of respondent than that of the client who appeared against him. Ac-

cusations of this kind are easily made and difficult to defend, and we shall not be quick to take the naked charge as a proof of guilt, and, acting upon that, not only deprive a member of the bar of the means of making a livelihood, but to disgrace him as well.

The third specification grows out of the following facts: It appears that a certain sawmill and lumber situate near Pagosa Junction and belonging to The Pagosa Lumber Company, of which one A. T. Sullenberger was the manager, was destroyed by fire and at the same time a house belonging to Delfido Archuleta was burned and an attempt was made to burn the store of The Archuleta Mercantile Company. It seemed to be apparent that the house and sawmill were burned by the same parties who attempted to burn the store. Two Mexicans of the name of Montalvo and Garcia were arrested, charged with the burning of this property. Sullenberger employed respondent to assist in the prosecution of these two people. J. M. Archuleta, the president of The Archuleta Mercantile Company, testifies that the Archuletas were to assist in the paying of respondent; and that that arrangement was made by Mr. Sullenberger. J. B. Martinez also testifies that Sullenberger had informed him that he and the Archuletas were going to employ Mr. Johnson to assist in prosecuting the case. Respondent testified that he was in the joint employment of the Archuletas and Sullenberger, and that his sole employment was for the purpose of prosecuting the two Mexicans, and that they were under arrest at the time respondent was employed. Sullenberger testifies that he was the sole employer. After respondent was employed and some investigations were being made for the purpose of securing testimony, a woman named Clara Chacon, who is spoken of by the witnesses as being a squaw and also as being of bad repute, stated

to some of the detectives employed that two of the Archuletas and one Maximiano Velasquez were implicated in the burning of this property. Respondent, Sullenberger and J. M. Archuleta expressed themselves as not believing the story of this woman, but an information was filed by the district attorney accusing Velasquez of the crime. It appears from the testimony of respondent, and in this respect it is not contradicted, that immediately upon his learning of the story circulated by 'the Chacon woman, he called Sullenberger by telephone and informed him as to this report. Sullenberger stated that he did not believe a word of it; that it was an improbable story that Delfido Archuleta would burn his own house, and that Max Velasquez was a particular friend of his; that he discredited the whole story and would have nothing to do with the prosecution of these persons. The Archuletas requested respondent to defend Velasquez. So, when the district attorney commenced to discuss the story of the woman with respondent, respondent promptly informed him that he could not discuss the question, as the Archuletas and Velasquez were old friends and clients of his. A night or two before the day of trial Garcia, one of the Mexicans who was in jail, escaped, whereupon Sullenberger instructed respondent that he would have nothing more to do with the matter and for him to dismiss the whole case. Upon the arraignment of Velasquez, respondent entered his appearance for him and tendered a plea of not guilty. Upon the motion of the district attorney the case against Montalvo and the case against Velasquez were consolidated for trial. A jury was impaneled, the district attorney called two or three witnesses and propounded a few questions to each of them. They were not cross-examined by either respondent or the attorney for the other defendant, and at the

close of the testimony the court instructed the jury to return a verdict of not guilty in each case. The district attorney was cognizant of respondent's connection with the entire affair, of his employment by Sullenberger, of the efforts that had been made to secure testimony, and of the fact that they had been unable to secure any testimony which would authorize the conviction; that when the names of Velasquez and Archuleta were mentioned in connection with the matter, he was promptly informed by respondent that he would have nothing more to do with it; that those people were clients of his. The district attorney made no objection to the appearance of respondent as counsel for Velasquez. There appears to have been no serious effort made on the part of the district attorney, or any other person, to obtain a conviction, and it is apparent from an inspection of the record in this case that, upon the escape of Garcia, the other defendants should have been discharged without having been put to the expense of a trial.

We see nothing culpable in the action of respondent in this matter, and the petition for his disbarment will be denied.

*Petition for disbarment denied.*

Decision *en banc*.