No. 14,140.

PEOPLE EX REL. ATTORNEY GENERAL *v*. ELLIS.
(70 P. [2d] 346)

Mr. BYRON G. ROGERS, Attorney General, Mr. LUKE J. KAVANAUGH, Deputy, Mr. PIERPONT FULLER, JR., Assistant, for petitioner.

Mr. ERL H. ELLIS, pro se.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

AN original proceeding in disbarment.

May 17, 1937, the court made the following order:
"Whereas, by petition in disbarment filed April 8, 1937, the petitioner [attorney general] charged, inter

alia, that 'on or about December 4, 1936, respondent [Erl H. Ellis] clandestinely, secretly, without the knowledge or consent of the governor of the state of Colorado, unlawfully installed or caused to be installed, dictographs, microphones and espionage paraphernalia in the private offices of the governor of the state of Colorado. That said espionage equipment was connected by electrical wiring with receiving and recording apparatus located in the private apartment of one Jack Gilmore in Denver, Colorado. Your relator [petitioner] is informed and believes and upon such information and belief alleges that said respondent agreed, conspired and confederated with Jack Gilmore, and Walden E. Sweet, and other persons whose names are unknown to your relator [petitioner], wrongfully, unlawfully, secretly and clandestinely to eavesdrop and spy upon private conversations between the citizens of the state of Colorado and governor of the state of Colorado and wrongfully, unlawfully, secretly and clandestinely to eavesdrop and spy upon the official deliberations of the executive department of the state of Colorado; and, in furtherance of said conspiracy and confederation, respondent and his associates did wrongfully, unlawfully, and systematically, eavesdrop and spy upon said conversations and did transmit and record all of the conversations occurring in said offices continuously over a long period of time and until March 21, 1937, without the knowledge or consent of the incumbent governor or his predecessor;' and,

"Whereas, by his answer filed April 19, 1937, respondent admitted, that, 'during the months of November and December, 1936, and January, February and March, 1937, this respondent planned with Jack Gilmore and Walden E. Sweet and directed and caused the installation of microphones in the office of the governor of the state of Colorado in the state capitol building and the connection of the said microphones by electrical wiring to receiving and recording apparatus located in an apartment occupied by Jack Gilmore and that a large number of con-

versations occurring in the said offices were heard and some recorded, all without the knowledge of any governor of the state of Colorado;' and,

"Whereas, considering only the admitted facts, the court wishes to be advised whether respondent has subjected himself to disciplinary orders.

"Therefore, it is ordered, that Monday, June 21, 1937, at two o'clock, it will hear the parties and interested counsel orally for one and one-half hours, and if other members of the bar shall notify the clerk that they wish to appear as friends of the court and speak to the question, they may be heard."

At the appointed time, the attorney general and deputy attorney general, appearing for petitioner, and respondent in his own behalf, presented their views.

As the issue was limited by the quoted order and in argument, so we have limited the scope of our consideration. We are disposed to the view that planned and studied espionage of the people's executive, as here, and regardless of the identity or calling of those engaging therein, is shocking to all fine sensibilities, violative of the American conception of the decencies, and potentially inimical to free government. For the people's court to regard it otherwise would be unthinkable. That the eavesdropping of which complaint is made was by a member of the bar, in manner and by means admitted by respondent, emphasizes the evil involved. By his confessed acts—and we consider nothing else—respondent has gravely offended, and for the tribunal charged with disciplinary responsibility to give it countenance would be gross dereliction.

Because, however, it is also charged that respondent is guilty of crime, a matter cognizable by authorities elsewhere, and out of which, should they proceed, questions may arise requiring review at our hands, we think it conformable to the demands of justice not to enter a final disciplinary order now, but reasonably await developments, if any, and from whatever proper source,

which may tend to aggravate or mitigate respondent's conduct. To that end, and until further order, let respondent be suspended from the bar, and the proceeding continue on the active docket.

MR. JUSTICE BOUCK, MR. JUSTICE BAKKE and MR. JUSTICE KNOUS concur.

· The views of Mr. Justice Young and Mr. Justice Holland appear from their accompanying opinions.

MR. CHIEF JUSTICE BURKE dissents.

MR. JUSTICE YOUNG. I concur in the determination of the majority of the court that the admissions of the respondent in his pleadings disclose a proper case for disciplinary action by the court; but I am of the opinion that in view of the wide discretion vested in the court as to the penalty in such matters, that if either the attorney general or respondent shall desire to submit testimony in aggravation or mitigation of the offense, such opportunity should be given before any penalty is imposed.

MR. JUSTICE HOLLAND. I am of the opinion that upon the admitted facts, the conduct of respondent appears inexcusable. However, pending the orderly determination of charges, relative thereto, and now under investigation by those primarily charged with that duty, further action by this court should be postponed, and final action should not be taken or any judgment imposed until aggravation or mitigation is made evident as in all similar matters.

MR. CHIEF JUSTICE BURKE, dissenting.

Since the judgment of this date appears to me probably final, or at least one which respondent can entertain little hope of reducing to less than indefinite suspension, with the present prospect of a more drastic penalty be-

cause of future developments in proceedings in which he is foreclosed, because I feel that no such judgment can yet be properly pronounced, and because of my conviction that there has thus far been herein neither hearing nor proof, I am obliged to dissent and state my reasons therefor.

The power and duty of this court to admit, disbar, reinstate, and govern by suspension and reprimand, members of the bar, its officers, is settled, unquestioned, and save in isolated cases and for a few fundamental rules, entirely discretionary. *People ex rel. v. Weeber,* 26 Colo. 229, 57 Pac. 1079. Discretion extends even to pardon for admitted offenders, and, when the facts justify, punishment and pardon may be included in the same judgment. *People ex rel. v. Essington,* 32 Colo. 168, 171, 75 Pac. 394. In exercising its power to discipline a court should be "considerate and careful," and act "with great moderation and judgment." *People ex rel. v. MacCabe,* 18 Colo. 186, 191, 32 Pac. 280. Adverse judgment should only be pronounced upon "clear and convincing proof," especially where the charge involves the commission of a crime. *People ex rel. v. Pendleton,* 17 Colo. 544, 30 Pac. 1041. Previous reputation and standing of the accused "is a matter entitled to much consideration." *People ex rel. v. Benson,* 24 Colo. 358, 370, 51 Pac. 481. The burden is upon the accuser to prove his charges and the court will "not be quick to take the naked charge as a proof of guilt." *People ex rel. v. Johnson,* 40 Colo. 460, 464, 90 Pac. 1038. Although when charges are filed and served the accused makes no answer, still "the charges must be proven." *In re Walkey,* 26 Colo. 161, 56 Pac. 576.

This respondent is known to us and admitted in argument to be one of the recognized leaders of the bar in Colorado. He has practiced his profession in Denver for twenty-five years. That he has been above reproach we have testified by judicial action, having appointed him a member of the "Bar Committee" of this court in

January, 1924, on which he served for more than twelve years, and from which he retired by voluntary resignation a few months since. For about the same period he served as a member of the Committee on Grievances of the Colorado Bar Association, a part of that time as its chairman. The former is this court's committee on the character of applicants for admission to the bar. The latter, during most of respondent's service, was established by rule and decision "an arm of the court" in disciplinary proceedings. If "Previous reputation and standing" ever stand one in stead when charged this respondent has, in the beginning, the protection of a very considerable barricade. The Attorney General, in his brief, insists that he has charged two crimes, conspiracy to commit the common-law crime of eavesdropping and the commission of that crime. He furthermore asserts that respondent's answer admits the charges. If so it might be pertinent to inquire why no information against him, and particularly why no proceedings against his co-conspirators. But assuming the charges there is clearly no admission. There can be no such crime, the Attorney General admits, except the spying and listening be habitual, for the purpose of circulating slanderous and mischievous tales, and the private discourse heard be tattled abroad. All this being denied must be dismissed. The Attorney General further says he charges misconduct unworthy a lawyer, and as a part thereof he charges threats against officials, conspiracy to usurp their functions, to undermine confidence and incite contempt and opposition, all of which is denied and must be dismissed.

The Attorney General further says respondent was serving a client, using improper means to influence legislation, and stirring up litigation, all of which is denied and must be dismissed.

But this is not enough. Respondent demands proof, and the Attorney General himself suggests that we interrogate respondent concerning some of these charges.

If he is to be questioned certainly he may also produce witnesses. If these must, or may, testify, will the prosecutor be permitted to sit silent? May a lawyer of character and standing be thus attacked and his demand for proof waived aside with a gesture? The Attorney General should produce the proof or withdraw the charges.

He does the latter, in effect, by his reply, which is limited to one printed page. Therein he says it is admitted "That respondent secretly placed microphones and attendant apparatus in the office of the governor of the state for the purpose of overhearing all conversations therein taking place. This is the sole issue before the court. The usual rules of ordinary legal procedure apply." I must assume this means a motion for judgment on the pleadings was in order. If so, why all the charges of motive? Certainly the Attorney General would not intentionally scandalize a lawyer of standing, admit his charges are immaterial, and fail to withdraw them or support them with evidence. Moreover, it is well settled that the usual rules of ordinary legal procedure do not apply in disbarment cases.

Let us remember there is nothing legally confidential in conversations with the governor. No liability attaches, by common law or statute, to their disclosure. They are not in the class with Grand Jury or Executive Legislative sessions. This of course does not justify a lawyer in surreptitiously securing or scandalously disclosing them. He may still be disciplined therefor. I share the common detestation of "snooping." Generally "snoopers" deserve contempt, but not always. Nations have been saved by them. We then call them spies and consider their conduct the highest patriotism. Their exploits became historic romances and their memories hallowed. It all depends upon motive and intent.

Assuming that respondent's admitted conduct must be punished, what shall the sentence be? A mild private reprimand or professional death? The answer depends upon motive and intent. If respondent did what he ad-

mits, plus all the Attorney General charges, and with the motives imputed, I think he should be disciplined, possibly disbarred, not because his actions would be illegal, but because they would be indecent, unworthy a lawyer. But assume that we were at war and a lawyer had reliable information that the Governor, as Military Chief of the State, was hatching treason. Suppose for the purpose of foiling the plot he installs microphones, records the negotiations, reports the treason, and saves the state. Would any one advocate disbarment, or even a slap on the wrist? It is all a simple question of motive and intent. Respondent alleges these as justification and the Attorney General denies them. Respondent demands a hearing and the Attorney General answers—"There is nothing to hear, you have admitted guilt. I call for judgment on the pleadings." In my opinion, if we grant the request, we are not "considerate and careful," we do not act "with great moderation," we do not require "clear and convincing proof," we are "quick to take the naked charge," we have not required that the accusation be proved, we have not given "much consideration" to "previous reputation and standing," we have ignored intent and motive, and finally, we have condemned a man and a lawyer unheard.

I think the cause should be sent to a referee to take evidence and report, and that since charge and answer, accused and accuser, are known, and since the facts upon which motive and intent were founded are either immaterial or of public concern, that the hearing should be public.