Burton B. Roberts, J.
In June, 1972, the defendants, Currier J. Holman and Iowa Beef Processors, Inc., a corporation of which defendant Holman is cochairman of the hoard of directors, were under investigation by the office of the District Attorney of New York County for their alleged participation in a scheme to bribe union leaders and supermarket officials in order *614 to facilitate the marketing of prebutchered “ boxed beef ” in the New York City metropolitan area. This inv'estigation subsequently led to the instant indictment, which was filed March 8, 1973, and which charges defendants with conspiracy to bribe labor officials (Penal Law, §§ 105.05, 180.15) and conspiracy to commit commercial bribery (Penal Law, §§ 105.00, 180.00).
During the course of the investigation, on June 23, 1972, an attorney for Holman and the corporation, Jeffrey M. Atlas, Esq., wrote a letter to the District Attorney requesting a meeting at which Holman could relate his own version of the facts to the investigators. In a return letter, Assistant District Attorney Franklyn H. Snitow stated that his office was “ willing to interview Mr. Holman with the understanding that anything Mr. Holman will choose to tell us can be used in any criminal proceeding that might be instituted against him.” The “ on the record ” nature of the proposed meeting was thereafter confirmed orally by Mr. Atlas and the meeting was set for July 21,1972 at the District Attorney’s office.
The meeting was in fact held on that date in the office of then Chief Assistant District Attorney Alfred J. Scotti. Present were Mr. Scotti, Mr. Snitow and several members of the District Attorney’s staff, as well as Mr. Atlas, his partner, Richard H. Wynn, Esq., and the defendant Holman. Holman acknowledged at the outset of the meeting that he understood that anything he said could be used against him in a criminal proceeding. What followed thereafter was a free-wheeling discussion, with all the parties, including defense 'counsel, participating. It is accurately characterized by Mr. Atlas now as having consisted of ‘ ‘ narrative accounts of Mr. Holman, questions put by Mr. Scotti, answers of Mr. Holman, answers by counsel, ¡assertions of counsel, ‘ devil’s advocate ’ questions by myself and Mr. Wynn and arguments by all. ’ ’
Unknown to Holman and his attorneys, this entire meeting was secretly tape-recorded by the District Attorney’s personnel. The People have announced their intention to introduce this tape at the trial of the instant indictment. Defendants now move to suppress the tape from evidence.
Defendants make ¡three basic contentions with respect to their motion. First, they assert that the recorded conversation was never intended by them to represent a definitive statement by defendant Holman with respect ¡to the facts of this case. Rather, it is urged, what took place at the meeting was in the nature of an investigative give-and-take. Thus, they claim in effect that the tape should be suppressed because ¡the nature of Hoi *615 man’s statements was such that he was not able to fully articulate his position. Little need be said with regard to this contention, other than to say that it clearly bears on the weight to be accorded such statements rather than their admissibility. No evidentiary or constitutional issue is raised by the fact that Holman’s statements may not have been as complete as counsel would have liked. It is for the trier of fact to determine what value, if any, these statements are to have as evidence, taking into consideration all the circumstances in which they were made.
The second contention is only a bit more troublesome. Counsel maintain that Mr. Scotti’s surreptitious recording of a conversation between himself and other lawyers was unethical and violated the concepts of “ fundamental fairness ” and due process of law mandated by the Fourteenth Amendment. How this would affect ¡the admissibility of the recorded statements of the defendant, however, is somewhat unclear. Counsel apparently concede that statements made by Holman were obtained with due regard for his Sixth Amendment right to counsel and that he knowingly waived any Fifth Amendment privilege by acknowledging that his statements could be used against him. They also concede that the secret tape recording of the defendant’s statement with the consent of one party to the conversation is not violative of the defendant’s Fourth Amendment rights. (See White v. United States, 401 U. S. 745.) That makes the issue whether any ethical violation occurred in view of the fact that attorneys were present and, if so, whether any such indiscretion requires that the entire tape be suppressed. On the ethical question, counsel cite Opinion No. 328 of the Committee on Professional Ethics of the New York State Bar Association (dated March 18, 1974) holding it improper “ except in special situations ” for an attorney engaged in private practice to electronically record a conversation with another attorney or any other person without first advising the other party. The cited opinion is inapplicable to this case in view of ¡the fact that Mr. Scotti was not in private practice and was in fact a law enforcement officer conducting, in the main, an on-the-record interview with a potential defendant. What is dispositive of the defendants’ contention, however, is not the ethical question but. the fact that the Code of Professional Responsibility upon which it is based applies only to the conduct of lawyers (Preamble and Preliminary Statement, N. Y. Judiciary Law, McKinney’s Cons. Laws of N. Y., Book 29,1973 Supp., p. 79). It cannot, therefore, be said to be of due process dimensions, that is, to constitute a “ ‘ principle of justice so rooted *616 in the tradition and conscience of our people as to be ranked as fundamental ’ (Palko v. Connecticut, 302 U. S. 319, 325.)
The third contention is the most troublesome. Counsel point out that their own voices were recorded on the tape in question, without their consent, and that they never intended to permit their clients to be bound by any of the statements of counsel made at the meeting. The count has read a transcript of this tape recording which is approximately 100 pages in length. While the major portion of it contains statements made by defendant Holman in response to questions by Mr. Scotti, it appears that there are indeed several factual statements made by counsel, both in the form of questions posed to their client and otherwise. Under these circumstances, I feel that to permit the receipt in evidence of the entire tape may be to deny defendants their Sixth Amendment right to the effective assistance of counsel. Statements made by counsel on the tape could conceivably undermine counsel’s ability — credibility, really — to ■argue certain theories and inferences from the facts before the trier of fact. Worse yet, statements made by counsel on the tape could conceivably place defense lawyers in the position of unsworn witnesses against their clients. These possibilities must be avoided (cf. People v. Perez, 34 A D 2d 536). Consequently, the court directs that defense counsel and the Assistant District Attorney agree upon a redacted version of the tape and transcript in accordance with this decision. Any disputes with regard to the prejudicial nature of a statement by counsel will be presented to the count for resolution.