The PEOPLE of the State of Colorado, Complainant,

v.

James Mitchell SMITH, Attorney–Respondent.

No. 88SA239.

Supreme Court of Colorado, En Banc.

July 24, 1989.

Linda Donnelly, Disciplinary Counsel, Denver, for complainant.

Bender & Treece, P.C., Michael L. Bender, Denver, for attorney-respondent.

KIRSHBAUM, Justice.

A disciplinary complaint was filed with the Grievance Committee charging the respondent, James Mitchell Smith, with unprofessional conduct. A hearing panel of the Grievance Committee unanimously approved the findings of fact and recommendation of the hearing board that the respondent be suspended from the practice of law for a period of two years and that, prior to reinstatement, the respondent be required to undergo psychological and physiological tests and furnish explanations of the results and conclusions reached by the health professionals administering such tests concerning his ability and fitness to practice law. Upon receipt of this recommendation, this court issued an order to show cause why a more severe sanction should not be imposed in this case. Having received responses to that order, we conclude that the respondent should be suspended from the practice of law for a period of two years.

The respondent was admitted to the practice of law in Colorado in May of 1979, and is subject to the jurisdiction of this court and the Grievance Committee. C.R.C.P. 241.1(b). The respondent was admitted to the practice of law in the Commonwealth of Massachusetts in 1976. The respondent has previously received one letter of admonition, dated October 29, 1984.

In November of 1979, the respondent developed a chemical dependency on cocaine and alcohol. He continued to use cocaine through March of 1984.

Sometime prior to July 1983, the respondent developed a social relationship with the complaining witness in this proceeding. In July 1983, the complaining witness was charged with the offense of possession of cocaine and retained the respondent to represent him. The complaining witness ultimately pled guilty to the charge and received a sentence to probation. The respondent's representation of the complaining witness in that matter was completed prior to December of 1983.

In February of 1984, George Ridley, a police informant, and another party visited the respondent's home and informed the

respondent that three individuals had been arrested in Jefferson County on charges of sale of cocaine. The respondent agreed to seek the release of the defendants and to represent them in preliminary matters. At that meeting the party accompanying Ridley claimed ownership of the cocaine that had been seized from the defendants upon their arrest.

The respondent advanced money for bonds for the three defendants. Only one of them reimbursed the respondent. The respondent made several phone calls to the other two defendants requesting reimbursement. Some of those calls were intercepted by police officials by means of a wiretap on the telephone of one of the defendants. On March 16, 1984, the respondent was permitted by the trial court to withdraw as counsel for one of the defendants.

On March 27, 1984, an investigator from a district attorney's office and an agent from a police department contacted the respondent. They informed him that they were aware that he used cocaine and that they believed he was an active participant in drug-selling operations. The officers demanded the respondent's cooperation in investigating the conduct of third parties and threatened to file criminal charges against the respondent if he did not assist their investigations. The respondent immediately filed a motion to withdraw as counsel for the two parties he had represented in the pending Jefferson County case, which motion was granted on April 21, 1984.

During these initial discussions, the respondent informed the police authorities that the cocaine involved in the Jefferson County case belonged to the party who had accompanied Ridley to the respondent's home. Ridley had already reported this information to police officials.

In May of 1984, the respondent agreed to perform undercover activities for the Colorado Bureau of Investigation (CBI) with respect to an investigation of the complaining witness. Upon the advice of an assistant state attorney general, CBI representatives requested the respondent to record telephone conversations secretly. After obtaining assurances from a member of the attorney general's office that such conduct would not violate the Code of Professional Responsibility, the respondent agreed. He did so in part because of a concern that criminal charges might be filed against him if he did not agree.

In August, the respondent placed several phone calls to the complaining witness requesting to purchase cocaine. On September 6, 1984, he did purchase cocaine from the complaining witness. During that transaction, the respondent wore a body microphone to permit CBI agents to monitor the conversation. On December 19, 1984, the complaining witness was arrested and charged with the sale of cocaine to the respondent. In May of 1985, the complaining witness entered pleas of guilty to three felony drug-related charges.

The respondent admits that he illegally purchased and used cocaine from November 1979 to March 1984, and that his conduct violated the Code of Professional Responsibility. C.R.C.P. 241.6(1) (violating a provision of the Code); 241.6(2) (violating accepted rules or standards of legal ethics); 241.6(3) (violating the highest standards of honesty, justice or morality); and 241.6(5) (violating criminal laws). The respondent further admits that his cocaine use adversely affected his fitness to practice law, in violation of DR1–102(A)(1) (violating a disciplinary rule), and DR1–102(A)(5) (engaging in conduct prejudicial to the administration of justice), and that he improperly revealed information communicated to him in confidence by a client in violation of DR4–101(B)(1) (impermissibly revealing a secret of a client). These multiple violations of the minimal standards of professional conduct required for all attorneys are in themselves sufficient to warrant the imposition of a severe sanction.

The respondent's surreptitious recordings of conversations with the complaining witness constitute additional violations of provisions of the Code. While the respondent no longer represented the complaining witness, the conduct in all probability would not have occurred had the respondent not relied upon the trust and confidence placed in him by the complaining witness as a result of the recently completed attorney-client relationship between the

two. The undisclosed use of a recording device necessarily involves elements of deception and trickery which do not comport with the high standards of candor and fairness to which all attorneys are bound. *People v. Selby*, 198 Colo. 386, 390, 606 P.2d 45, 47 (1979). *See People ex rel. Attorney General v. Ellis*, 101 Colo. 101, 70 P.2d 346 (1937). We conclude that these acts violated the provisions of DR1–102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation).

The respondent asserts that his conduct should be deemed an exception to these ethical considerations because he was acting under the direction of and pursuant to the advice of law enforcement officials in their pursuit of their professional responsibilities. It may well be that important public policy considerations permit executive officials to rely upon techniques involving fraud and misrepresentation to obtain information about criminal conduct.

We do not comment in this opinion upon what some jurisdictions have expressly recognized as a prosecutorial exception to the general rule that the standards for prohibiting deceit, dishonesty and fraud preclude attorneys from surreptitiously recording communications with clients and others. *United States v. Sutton*, 801 F.2d 1346, 1366 (D.C.Cir.1986); *United States v. Kenny*, 645 F.2d 1323, 1339 (9th Cir.), *cert. denied*, 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981); *People v. Holman*, 78 Misc.2d 613, 356 N.Y.S.2d 958, 960–61 (N.Y.App.Div.1974). *See also* ABA *Comm. on Ethics and Professional Responsibility*, Formal Op. 337 (1985).

The respondent, however, was a private attorney, not a prosecuting attorney. We do not agree that the above-described policy considerations permit private counsel to deal dishonestly and deceitfully with clients, former clients and others. To hold otherwise would fatally undermine the foundation of trust and confidentiality that is essential to the attorney-client relationship in the context of civil as well as criminal proceedings.

The respondent asserts that his conduct was not motivated by an attempt to obtain leniency for himself at the expense of the complaining witness, but that it is best explained by the fact that he was physically and emotionally distraught at the time. The respondent notes that he sought advice from law enforcement officials regarding his participation in the criminal investigation of the complaining witness and was assured by a member of the state attorney general's office that such conduct would not violate professional ethical standards. The hearing board concluded, however, that the respondent's conduct in revealing a secret of his client to police officials was motivated in part by a desire to reduce his own exposure to prosecution. The evidence supports this finding. The respondent's agreement to obtain information for the CBI about the complaining witness was also motivated in part by that concern. Given all of these circumstances, we reject the respondent's argument that his conduct did not constitute deceitful conduct as contemplated by DR1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).

II

The question of imposition of an appropriate sanction involves a balancing of the seriousness of the offense with mitigating and aggravating factors disclosed by the record. ABA *Standards for Imposing Lawyer Sanctions* § 9.1, commentary (1986). The respondent has received psychiatric treatment for his drug dependency and has not used cocaine since 1984. He now enjoys a successful practice of law in Massachusetts, and has participated actively in several Massachusetts organizations, including bar association groups that deal with problems of substance abuse. These are mitigating factors. *See* ABA *Standards for Imposing Lawyer Sanctions* § 9.32(j) (1986).

The respondent argues that his conduct does not warrant a severe sanction because it caused no harm to others. It is true that his disclosure of his client's secret did not harm the client in this case because the information was already known to police officials. However, the sale of cocaine by the complaining witness was deceitfully encouraged by the respondent. Although the

complaining witness' own criminal activities constituted the illegal conduct for which he was prosecuted, the respondent's professional misconduct contributed to those activities.

Furthermore, the respondent's conduct with respect to the complaining witness resulted in part from his desire to reduce personal repercussions flowing from his own admitted illegal use of cocaine. Thus, his case is distinguishable from *People v. Driscoll*, 716 P.2d 1086 (Colo.1986), and *People v. Simon*, 698 P.2d 228 (Colo.1985), wherein attorneys received public censures for conduct resulting from drug dependency. In neither of those cases did the attorneys intentionally aid law enforcement officials in prosecuting former clients by obtaining information and evidence by means of unconsented recordings of conversations.

Section 5.12 of the ABA *Standards for Imposing Lawyer Sanctions* recommends suspension from the practice of law when an attorney knowingly engages in illegal use of drugs and the conduct did not involve the sale, distribution or importation of drugs. Section 4.62 of those *Standards* also recommends suspension for engaging in deceptive behavior causing injury to a client. We have already indicated that the respondent's conduct did contribute to injuries suffered by the complaining witness and that the respondent placed his personal concerns above those of his former client. We also note as a further aggravating factor that the respondent has previously been sanctioned for conduct violative of the Code.

The mitigating factors established by evidence of the respondent's apparent rehabilitation and outstanding contributions to the practice of law in the Commonwealth of Massachusetts support our conclusion that disbarment for the repeated and various acts of professional misconduct admittedly engaged in by the respondent over a five-year period of time would constitute too severe a sanction. Nevertheless, in view of the variety and character of the respondent's professional misconduct and the fact that the respondent has previously been disciplined, we agree with the recommendation of the Grievance Committee.

Accordingly, the respondent, James Mitchell Smith, is suspended from the practice of law for a period of two years. The respondent shall pay the costs of these proceedings, in the amount of $193.10, to the Grievance Committee, 600—17th Street, Suite 500–S, Denver, Colorado 80202–5435 within sixty days of the date of this opinion. The respondent shall not be reinstated until the costs of these proceedings have been paid.

ERICKSON, J., dissents, and
VOLLACK, J., joins the dissent.

ERICKSON, Justice, dissenting:

I respectfully dissent to the sanction imposed. The respondent breached the confidential attorney-client relationship and participated in drug transactions in such a manner as to bring disrespect and a dishonor to the legal profession. In my view, the sanction should not be less than disbarment.

VOLLACK, J., joins in this dissent.