COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Appellee,

v.

Michael L. MOLLMAN, Appellant.

No. 92–83.

Supreme Court of Iowa.

June 17, 1992.

 

William L. Kutmus of Kutmus & Pennington, P.C., Des Moines, for appellant.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

NEUMAN, Justice.

The Committee on Professional Ethics and Conduct of the Iowa State Bar Association (committee) charged attorney Michael Mollman with unethically betraying the confidence of a friend and former client in order to secure leniency in his own prosecution for possession of cocaine. A division of the Grievance Commission found no attorney-client relationship but recommended a suspension of thirty days for deceitful conduct that brought discredit upon the legal profession. On Mollman's appeal we affirm the findings of the commission and its recommended sanction.

Respondent Michael Mollman has practiced law in Cedar Rapids, Iowa, since 1978. He served seven years as an assistant Linn county attorney. Now in private practice, he devotes approximately one-third of his time to criminal defense work.

During the summer of 1988, the FBI was investigating illegal drug activity among professional people in Cedar Rapids. Among the targets of the investigation were Mollman and his good friend, Edward Johnson. Johnson was a teacher and high school football coach. Along with other close friends, they had casually used cocaine and marijuana on social occasions for a number of years.

FBI agents offered Mollman immunity from prosecution if he would set up a cocaine "buy" from Johnson. Mollman refused to do so. He was unwilling to prompt Johnson to deliberately break the law. Moreover, he thought that such a buy would mischaracterize Johnson as a dealer when, in fact, he believed Johnson had a drug problem and would secure cocaine for Mollman merely out of friendship.

Mollman did agree, however, to wear a concealed body microphone so that federal agents could monitor and record a conversation with Johnson. The pretext for the conversation was Mollman's and Johnson's concern that several mutual friends had been subpoenaed to testify before a grand jury. Armed with a "script" written by federal agents, Mollman suggested that he and Johnson "get their stories straight" about their past drug usage. This intentionally incriminating conversation, and Mollman's secret recording of it, took place in Johnson's home.

In exchange for "wearing a wire" Mollman was permitted to plead guilty to one count of possession of cocaine, a misdemeanor, for which he paid a $2000 fine and was placed on probation for one year. Johnson was ultimately convicted of the more serious offense of conspiracy with intent to distribute cocaine. He was sentenced to twenty-one months in a federal prison, required to perform 200 hours of community service, and was subject to three years supervision following his release from incarceration. He is the complaining witness in these proceedings.

The committee charged Mollman with violating the following provisions of the Iowa Code of Professional Responsibility: DR 1-102(A)(4) (prohibiting a lawyer from engaging "in conduct involving dishonesty, fraud, deceit, or misrepresentation"); DR 4-101(B) (lawyer shall not knowingly reveal the confidence or secret of a client or use them to lawyer's own advantage); EC 4-4 (lawyer obliged to preserve and protect attorney-client privilege); EC 9-2 (lawyer should act in manner that promotes public confidence in integrity of legal profession); and EC 9-6 (lawyers should strive to uphold profession by avoiding even appearance of impropriety). In addition, the committee alleged that Mollman's conduct violated the committee's formal advisory opinion 83-16 which provides that "no lawyer should record any conversation whether by tapes or other electronic device, without the consent or prior knowledge of all parties to the conversation." This rule, adopted in 1982 and modeled after ABA Formal Opinion 337, makes such recordings

unethical even if legal under federal law. *See* ISBA Comm. on Professional Ethics & Conduct, Formal Op. 83-16 (1982) (hereinafter "formal opinion 83-16"). But the opinion does permit an ad hoc exception for government prosecutors under "extraordinary circumstances." *Id.*

At the hearing before the Grievance Commission, the nature of the relationship between Mollman and Johnson was very much at issue. Johnson testified to his firm belief that Mollman was his attorney, as well as his friend, and that he had confided in him freely about personal matters with the expectation that his confidence would not be betrayed. This presumption of confidentiality extended from informal discussions of marital problems in 1982 through the taped conversation about drug usage in 1988. Johnson acknowledged, however, that he had formally hired Mollman as an attorney only once in connection with an OWI case in 1985. We also note that the taped conversation recorded in August 1988 reveals Mollman's repeated disclaimer of any intent to act as Johnson's counsel in regard to the pending FBI investigation. On the other hand, much of the tape centers on Mollman's somewhat casual explanation of what Johnson might anticipate with regard to a federal drug prosecution.

Mollman's argument before the Grievance Commission, renewed on appeal, is this: He cooperated with the government as a private citizen, not as an attorney, and thus the ethics of his conduct should not be measured by the code of professional responsibility. In the alternative he asserts that he relied on the exception to formal opinion 83-16 to justify the surreptitious recording. Although the commission found no attorney-client relationship, it rejected Mollman's claim that he could thereby escape the reach of the canons.

 The committee bears the burden of proving its allegations by a convincing preponderance of the evidence. *Committee on Professional Ethics & Conduct v. Wunschel,* 461 N.W.2d 840, 845 (Iowa 1990). While we give weight to the com-

mission's findings and recommended sanction, we are not bound thereby. *Committee on Professional Ethics & Conduct v. Wenger,* 469 N.W.2d 678, 679 (Iowa 1991). Our review on appeal is de novo. *Id.*

■ I. We recently reiterated the test by which proof of an attorney-client relationship is measured:

An attorney-client relationship is generally established by contract. The contract may be express, or implied from the conduct of the parties. The party attempting to establish the relationship must prove the following elements: (1) a person sought advice or assistance from an attorney, (2) the advice or assistance sought pertained to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agreed to give or actually gave the desired advice or assistance.

*Wunschel,* 461 N.W.2d at 845 (citations omitted). Based on the facts sketched above, the committee has not cross-appealed the commission's finding that no professional relationship existed between Mollman and Johnson at the time their conversation was recorded. The committee seems to concede a failure of proof on elements (1) and (3) because it was Mollman, not Johnson, who initiated the conversation and Mollman repeatedly cautioned Johnson to retain independent counsel. The record supports this conclusion.

■ That is not to say, however, that Mollman shed his ethical responsibility as a lawyer in these circumstances. *Committee on Professional Ethics & Conduct v. Williams,* 473 N.W.2d 203, 206 (Iowa 1991); *Committee on Professional Ethics & Conduct v. Hall,* 463 N.W.2d 30, 35 (Iowa 1990); *Committee on Professional Ethics & Conduct v. Millen,* 357 N.W.2d 313, 315 (Iowa 1984).

Moreover, it appears that Mollman was able to draw incriminating statements out of Johnson precisely because their conversation centered on the legal implications of the way they had pooled their resources to purchase and share drugs in the past. The tape clearly reveals that Johnson looked to Mollman for guidance, if not legal advice,

on these matters and, in doing so, made the admissions federal agents wanted.

The fact that Mollman secured these admissions by deceit and misrepresentation is simply irrebuttable under this record. That the trickery occurred outside the strict bounds of an attorney-client relationship is, we think, of only passing significance. *See Millen,* 357 N.W.2d at 315 (lawyer sanctioned for dishonest and deceitful conduct in personal divorce proceedings); *People v. Smith,* 778 P.2d 685, 686–87 (Colo.1989) (though formal lawyer-client relationship had ended, trust inspired by that relationship betrayed by use of inherently deceptive recording device).

We do not mean by this opinion to suggest that there is not a zone of privacy in which a lawyer's honesty in purely personal matters remains free from scrutiny by committee or court. But any reasonable drawing of that line would find Mollman beyond it. To save his own skin, he used artifice to lure Johnson into a trap set by federal law enforcement officials. This was not a purely personal matter.

"Fundamental honesty is the base line and mandatory requirement to serve in the legal profession." *Wenger,* 469 N.W.2d at 678 (quoting *Committee on Professional Ethics & Conduct v. Bauerle,* 460 N.W.2d 452, 453 (Iowa 1990)). Mollman shunned this requirement when it suited his purpose. In doing so, he violated DR 1–102(A)(4), EC 9–2, and EC 9–6.

■ II. Beyond this proof of deceitful conduct, the committee sought to prove that Mollman violated formal opinion 83–16. As noted earlier, the opinion outlaws any surreptitious recording of conversations by lawyers. It is premised on the view that such conduct is inherently deceptive and thereby violates the aspirational goals of EC 1–5, EC 4–4, EC 4–5, EC 7–1, EC 9–2, and EC 9–6 as well as DR 1–102(A)(4). *See* Formal Op. 83–16. Not all recordings, however, are necessarily banned:

There may be extraordinary circumstances in which the Attorney General of the United States or the principal prose-

cuting attorney of state or local government or law enforcement attorneys or officers acting under the direction of the Attorney General or such principal prosecuting attorneys might ethically make and use secret recordings if acting within strict statutory limitations conforming to constitutional requirements.

*Id.*

We have not previously considered formal opinion 83–16 in a disciplinary case. Although advisory only, a committee's formal opinion is effective unless modified by decision of this court or superseded by the code of professional responsibility or another advisory opinion. Committee on Professional Ethics & Conduct Rule 6.1. Thus the question before us is whether we should adopt the committee's opinion and, if adopted, whether Mollman should benefit from its limited exception.

At least three jurisdictions recognize and apply the formal opinion across the board to conversations between attorneys and members of the public or legal profession. *National Life & Accident Ins. Co. v. Miller,* 484 So.2d 329, 338 (Miss.1985); *Matter of Anonymous Member of South Carolina Bar,* 304 S.C. 342, 343–44, 404 S.E.2d 513, 514 (1991); *Cleckner v. Dale,* 719 S.W.2d 535, 537 n. 1 (Tenn.App.1986). Others have expressed an inclination to do so in the proper case. *See Gunter v. Virginia State Bar,* 238 Va. 617, 621, 385 S.E.2d 597, 600 (1988) (surreptitious recordation authorized by lawyer an "underhand practice" violating DR 1–102(A)(4) but application of ABA formal opinion requires lawyer to be party to conversation); *People v. Holman,* 78 Misc.2d 613, 614–16, 356 N.Y.S.2d 958, 960–61 (Sup.Ct.1974) (noting similar New York bar opinion applies only to lawyers in private practice).

Mollman does not contest the wisdom or spirit of formal opinion 83–16 on appeal. He merely claims that because he acted "under the direction of" federal prosecutors, he should benefit from the rule's exception. The commission was not so convinced, and neither are we.

First, the plain language of the rule limits its exception to "law enforcement attor-

neys or officers." Formal Op. 83–16. It makes no room for private citizens acting as government "agents," as Mollman describes himself. Nor do we think Mollman, as a private attorney, could qualify for this status. In that connection, we echo the sentiment of the Colorado Supreme Court in a very similar case:

> The respondent, however, was a private attorney, not a prosecuting attorney. We do not agree that the [policy considerations underlying the prosecutorial exception] permit private counsel to deal dishonestly and deceitfully with clients, former clients and others. To hold otherwise would fatally undermine the foundation of trust and confidentiality that is essential to the attorney-client relationship in the context of civil as well as criminal proceedings.

*People v. Smith,* 778 P.2d at 687.

Second, the rule itself declines to make the exception automatic. It states:

> This opinion does not address such exceptions which would necessarily require examination on a case by case basis. It should be stressed, however, that the mere fact that secret recordation in a particular instance is not illegal will not necessarily render the conduct of a public law enforcement officer in making such a recording ethical.

Formal Op. 83–16. Examining the exception in light of the present case, we are unable to justify its application. Mollman argues that he was a mere citizen acting "for the benefit of the community." But the record makes plain that his motives were far from altruistic. It would depreciate the role of true citizen-informants and government agents to cast Mollman in the same light.

In short, if formal opinion 83–16 were the only basis for disciplinary action against Mollman, he could not rely on the opinion's prosecutorial exception to excuse his conduct. As the case stands, however, Mollman is clearly guilty of violating the disciplinary rule underlying the formal opinion, DR 1–102(A)(4). Because the language of the advisory opinion exceeds the scope of the rule by applying to *any* re-

cording of conversations, whether or not intended by a lawyer to be deceptive or misleading, we reserve our decision about its blanket adoption.

■ III. Finally, we consider Mollman's plea that the commission's recommended thirty-day suspension is too severe.

For all we have said about Mollman's ulterior motives, we must also acknowledge that his personal and professional loyalties weighed heavily in the choice he made. The FBI investigation forced him to face up to his own mistakes. He knew that his family's future hung in the balance. Had he given the federal agents all they wanted, he could have obtained complete immunity for himself. Instead, he chose a course that would more fairly portray Johnson's role and not engage him in further criminal activity. That decision cost Mollman a criminal conviction.

The record reveals that Mollman discussed at length with federal prosecutors the ethical implications of his actions. Regrettably, he was convinced by them that no duties would be breached because no attorney-client relationship existed. Mollman cannot escape responsibility for his decision by blaming it on others. We point out these circumstances merely to highlight the fact that his decision was not thoughtlessly made.

Respected members of the bar and community spoke on behalf of Mollman's professional and civic contributions. But for this unfortunate incident, his record as a lawyer reveals no other departures from the high standards of the profession.

We note that the decision of the Grievance Commission was not unanimous. One member wrote separately to convey his view that Mollman had already paid a stiff price for conduct he honestly thought would not bring discredit upon the profession.

Against these mitigating factors, we must weigh the fact that Mollman's conduct was blatantly dishonest. The commission's recommended sanction is within the range of sanctions recently imposed in cases involving lawyer dishonesty, deceit, and misrepresentation. *See, e.g., Committee on Professional Ethics & Conduct v. Conzett,* 476 N.W.2d 43, 45–46 (Iowa 1991) (despite "laudable acts" by attorney in addressing consequences of his conduct, four-month suspension imposed for misrepresentation to client regarding status of case); *Committee on Professional Ethics & Conduct v. Zimmerman,* 465 N.W.2d 288, 293 (Iowa 1991) (six-month suspension for misleading court with respect to application for fees in conservatorship matter); *Committee on Professional Ethics & Conduct v. Clauss,* 468 N.W.2d 213, 214–15 (Iowa 1991) (public reprimand appropriate sanction for misrepresentation by omission to district court).

We are persuaded that the commission's recommended sanction is not excessive. Accordingly, Michael Mollman's license to practice law in this state is hereby suspended indefinitely with no possibility of reinstatement for thirty days. The suspension shall apply to all facets of the practice of law. *See* Iowa Sup.Ct.R. 118.12. Any application for reinstatement shall be accompanied by proof that respondent has not practiced law during the period of suspension and that he has met the requirements for client notification and disengagement set forth in court rules 118.13 and 118.18. The costs of this disciplinary action are assessed against the respondent.

LICENSE SUSPENDED.

All Justices concur except CARTER, J., who concurs specially.

CARTER, Justice (concurring specially).

I concur in result. I believe that, irrespective of whether attorney Mollman communicated a disclaimer of any potential attorney-client relationship, Johnson nevertheless was relying on Mollman for legal advice. For that reason, he undoubtedly made statements that otherwise would not have been forthcoming. I believe that Mollman's conduct therefore violated DR 4–101(B) (lawyer shall not knowingly use the confidence or secret of a client to lawyer's own advantage).

I do not, however, share the court's reluctance to squarely pass on the validity of ABA Formal Opinion 337 or Committee on Professional Ethics and Conduct Formal Opinion 83–16 (1982) vis-à-vis the Iowa Code of Professional Responsibility for Lawyers. I believe that, in most instances, the practices that those opinions prohibit more nearly foster a search for truth and honest dealing than do the prophylactic rules that those opinions lay down. Consequently, as presently written, I would not approve those opinions as guidelines to which Iowa lawyers must give allegiance.