**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Appellant,**

v.

**Van M. PLUMB, Appellee.**

No. 95–1852.

Supreme Court of Iowa.

April 17, 1996.

David J. Grace, Des Moines, for complainant.

Roman Vald, West Des Moines, for respondent.

Considered by HARRIS, P.J., and LARSON, LAVORATO, NEUMAN, and SNELL, JJ.

NEUMAN, Justice.

This is an appeal by the board of professional ethics and conduct from a grievance commission decision that dismissed four out of five charges lodged against respondent attorney, Van M. Plumb. On the remaining charge—threatening criminal prosecution to gain an advantage in a civil matter—the commission found sufficient proof and recommended a public reprimand. The board now argues on appeal that the record also establishes that Plumb secretly recorded a conversation with another attorney in violation of DR 1–102(A)(4), an ethical breach it believes warrants a stiffer sanction. Although we agree the record furnishes adequate proof of the additional violation, we believe a public reprimand is still the appropriate sanction.

Attorney Plumb had practiced law in Des Moines for only a short time when he took on the representation of his family in Newton, Iowa. Plumb's brother and sister were embroiled in disputes with Mike Wells, a former boyfriend of Plumb's sister. Wells had reportedly abused Plumb's sister and involved her in drugs. Wells was represented by attorney James Cleverley, Jr. in connection with an alleged trespass on Plumb property.

In a conversation with Cleverley at his office, Plumb allegedly threatened to have Wells "set up" on a drug deal if he did not stay away from the Plumb family. Although Plumb believed he only told Cleverley he had knowledge of Wells' drug dealings and might turn him in, Cleverley evidently interpreted the conversation differently because he wasted no time warning his client by mail about Plumb's threat.

Plumb later learned about Cleverley's letter and became concerned about its contents. Cleverley, meanwhile, withdrew from representing Wells. Richard Phelps became Wells' new counsel.

Phelps refused to share with Plumb the contents of Cleverley's letter. Plumb became concerned that, because of Cleverley's established reputation in the community, he would prevail in any contest over what was actually said. So Plumb devised a plan to gather proof that he had not made the threats Cleverley claimed.

Plumb went to Cleverley's chambers at the courthouse. (Cleverley was then serving as a part-time magistrate and alternate associate judge.) There he engaged Cleverley in a conversation about their previous discussion concerning Wells and the resulting letter. Plumb secretly recorded the conversation.

I. As part of a five-count complaint, the board charged Plumb with secretly recording a conversation without the consent of or prior knowledge of the one being recorded. His conduct, the board alleged, violated DR 1–102(A)(4), (5), and (6) of the Iowa Code of Professional Responsibility (lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; conduct prejudicial to the administration of justice; conduct reflecting adversely on fitness to practice law).

In his written response to the board, Plumb admitted that he made the secret recording and that he knew it was unethical at the time he made it. In a later response to a request for admissions, however, Plumb stated "unknown" when asked whether his conduct violated DR 1–102(A)(4), (5) or (6). At the hearing before the grievance commission, Plumb testified that he was aware of a formal bar opinion prohibiting surreptitious recordings by lawyers except in certain limited circumstances. See ISBA Comm. on Prof. Ethics & Conduct, Formal Op. 83–16 (1982). He also agreed that none of the exceptions applied to his situation. See id. (excepting law enforcement officers). Plumb added that he had reviewed this court's decision in Committee on Professional Ethics & Conduct v. Mollman, 488 N.W.2d 168 (Iowa 1992), before deciding to make the secret recording. He made note of the special concurrence (which advocated rejection of the formal bar opinion) as one factor he considered before taking action. See id. at 173–74.

In its findings of fact, conclusions of law, and recommendation, the grievance commission summarily dismissed count II, the "secret recording" charge, holding the committee failed to meet its burden of proof. The commission did find sufficient proof to establish a violation of DR 7–105(A) (threatening criminal prosecution to gain advantage in civil matter) for an unrelated incident. Over-

all the commission considered Plumb's lack of credibility as a factor contributing to its recommendation of a public reprimand. The commission believed that Plumb was less than truthful about his pre-recording analysis of *Mollman*, given the fact he made no mention of it in his initial response to the board.

On appeal, the board challenges only the dismissal of count II and the recommended sanction.

■■ II. Our scope of review in attorney discipline proceedings is de novo. Iowa S.Ct.R. 118.11. Although we are not bound by the commission's findings, "we give them weight, especially when considering the credibility of witnesses." *Committee on Professional Ethics & Conduct v. O'Donohoe*, 426 N.W.2d 166, 168 (Iowa 1988). The burden rests on the board to prove by a "convincing preponderance of the evidence" that Plumb has committed the alleged disciplinary violations. *Id.*

■■ III. Neither party disputes that Plumb recorded his conversation with Cleverley without Cleverley's knowledge. The question is whether Plumb's conduct violated the Iowa Code of Professional Responsibility. The board claims that such a secret recording violates DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). In addition, the board urges us to find that Plumb's conduct violated formal bar advisory opinion 83–16 which prohibits surreptitious recordings except in very limited circumstances. Plumb responds that in light of this court's reservation of judgment regarding the blanket adoption of opinion 83–16, *see Mollman*, 488 N.W.2d at 172–73, no ethical violation occurred because (1) he acted in a purely personal capacity, (2) no litigation was pending or contemplated, and (3) the taped conversation was not intended to be dishonest.

A. *Formal opinion 83–16.* In *Mollman* we reserved any decision about blanket adoption of formal opinion 83–16 out of concern that the language of the advisory opinion exceeds the scope of the disciplinary rule underlying it, DR 1–102(A)(4). *Mollman*, 488 N.W.2d at 172–73. We continue to be-

lieve that any prosecution under the rule must rest on proof the lawyer intended to deceive or mislead the one being recorded. *See id.* at 171 (questioning advisory opinion's broad application to even private recordings). It is not the use of recording devices, but the employment of artifice or pretense, that truly poses a threat to the trust which is the bedrock of our professional relationships. We believe that enforcement of Canon 1 of the Code of Professional Responsibility will adequately insure that any erosion of these fundamental professional values will be met with appropriate sanction. We thus decline the board's renewed invitation to validate formal opinion 83–16 as a whole.

B. *DR 1–102(A)(4).* In *Mollman* we stated there may be "a zone of privacy in which a lawyer's honesty in purely personal matters remains free from scrutiny by committee or a court." *Mollman*, 488 N.W.2d at 171. Plumb seizes on this language in an attempt to distinguish his action from the conduct we sanctioned in *Mollman*. We are not at all convinced, however, that the recording at issue was made in the context of a purely personal transaction. To the contrary, the recording occurred in the course of Plumb's legal representation of family members. On the recording, Plumb and Cleverley discuss the meaning of their previous conversation, which also occurred in the course of litigation between the Plumb and Wells families. The record further reveals that, prior to making the recording, Plumb voiced threats to sue for slander. Thus had he obtained a concession from Cleverley on the tape, he likely would have used it in further litigation.

We find it especially troubling that Plumb tape recorded a conversation with a judge in chambers. Other courts have found such conduct particularly reprehensible. *In re Warner*, 286 S.C. 459, 335 S.E.2d 90, 91 (1985); *People v. Selby*, 198 Colo. 386, 606 P.2d 45, 47 (1979).

[A] lawyer has a very special responsibility for candor and fairness in all of his dealings with a court. Absent mutual trust and confidence between a judge and a lawyer—an officer of the court—the judi-

cial process will be impeded and the administration of justice frustrated.

*Selby,* 606 P.2d at 47. Although the board's charge against Plumb did not mention Cleverley's judicial status as a contributing factor in the violation, we believe the circumstances further weaken Plumb's suggestion that the matter was purely personal, not professional.

As for Plumb's claim that he harbored no intent to deceive Cleverley, the record simply does not bear out his defense. Had Plumb merely intended to clarify a misunderstanding, he could have chosen a more forthright method. Instead, as in *Mollman,* he violated the "fundamental honesty" required of all lawyers in order to "save his own skin." *Mollman,* 488 N.W.2d at 171.

We are convinced, however, that the conduct demonstrated here is less egregious than the conduct sanctioned in *Mollman.* *See id.* at 173 (thirty-day suspension for secretly recording former client to implicate him in drug dealing). First, unlike the recorded party in *Mollman,* Cleverley was neither Plumb's client nor was he relying on Plumb for advice. Second, Plumb's conduct was arguably directed at extricating *himself* from a bad situation, not incriminating Cleverley. We believe any sanction imposed should reflect these distinctions.

The board nevertheless argues for harsher discipline because it believes Plumb falsified his testimony before the commission. Surely, if it occurred, such falsity would be a proper consideration in determining the severity of any sanction. *Committee on Professional Ethics & Conduct v. Brodsky,* 318 N.W.2d 180, 183 (Iowa 1982); *Committee on Professional Ethics & Conduct v. Randall,* 285 N.W.2d 161, 165 (Iowa 1979). We do not, however, share the board's view of Plumb's testimony. Plumb never stated he believed his conduct was justified under either *Mollman* or formal opinion 83–16. He merely stated he took those pronouncements "into consideration" in deciding to proceed. The fact that he did not elaborate on this explanation in his first correspondence with the board does not furnish proof of additional dishonesty.

The variety of sanctions imposed in other jurisdictions for misconduct similar to Plumb's demonstrates that the severity of the sanction depends on the particular circumstances. *See People v. Smith,* 778 P.2d 685, 688 (Colo.1989) (attorney suspended for two years for surreptitious recording along with illegal purchase and use of cocaine); *Gunter v. Virginia State Bar,* 238 Va. 617, 385 S.E.2d 597, 600 (1989) (affirming thirty-day suspension); *Warner,* 335 S.E.2d at 91 (attorney publicly reprimanded given lack of prior misconduct); *People v. Wallin,* 621 P.2d 330, 332 (Colo.1981) (public censure ordered where attorney acknowledged seriousness of misconduct and offered volunteer service); *Selby,* 606 P.2d at 47 (attorney disbarred given long history of ethics violations and serious misconduct in secretly taping conversation with judge in chambers). Absent aggravating factors, however, public reprimand appears to be a common sanction.

Given Plumb's inexperience, and the relative harmlessness of the recording he secured, we believe no harsher sanction than already recommended by the grievance commission is necessary. We therefore publicly reprimand Van M. Plumb for his breach of the code of professional responsibility.

**ATTORNEY REPRIMANDED.**