COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Appellee,

v.

**Judith M. O'DONOHOE, Appellant.**

No. 87–1760.

Supreme Court of Iowa.

July 20, 1988.

Thomas J. Levis, Des Moines, for appellant.

James E. Gritzner of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for appellee.

█

NEUMAN, Justice.

The Committee on Professional Ethics and Conduct of the Iowa State Bar Association (committee) charged that attorney Judith M. O'Donohoe intentionally falsified a warranty deed in order to obtain a fraudulent advantage for her client. A division of the Grievance Commission (commission) heard the evidence in support of the claim and found the committee failed to prove that O'Donohoe willfully violated the Code

of Professional Responsibility. Nevertheless, it recommended that this court reprimand O'Donohoe for lack of due care resulting in a misrepresentation. Reviewing this decision on appeal, we agree with the result reached by the commission and its recommended sanction.

I. *Background.* The facts in this disciplinary action are essentially undisputed. At issue are the inferences that follow from those undisputed facts.

Respondent Judith M. O'Donohoe has been engaged in the practice of law in Charles City, Iowa, since her admission to the bar in 1976. This action arose out of her representation of Leon and Joan Thome in connection with two lawsuits brought by the Staceyville Lumber Company against them.

The first suit involved a mechanic's lien foreclosure, settled in 1983 upon Thome's execution of a short-term promissory note. When the Thomes failed to make the promised payments on the note, the lumber company commenced the second suit, a collection action, in September 1985. This matter was scheduled for a summary judgment hearing on November 13, 1985. O'Donohoe advised her clients that they had no valid defense to the action and judgment would be entered accordingly.

Earlier, however, in April 1985, Thomes had incorporated their farming operation with the assistance of an attorney in Mason City. The minutes of the organizational meeting of the corporation reflected Joan Thome's intent to transfer thirty acres of Mitchell County farmland to the corporation in exchange for corporate stock. The record reveals, however, that the attorney handling these corporate matters did not prepare a deed to effect this conveyance.

Because of this incorporation, Joan Thome called O'Donohoe just prior to the lumber company's summary judgment hearing on November 13, 1985, to inquire whether the corporate minutes would suffice to insulate the property from the impending judgment lien. O'Donohoe advised that the minutes would not protect them. She suggested Mrs. Thome bring her abstract to the office immediately so that a deed could be prepared.

Over the noon hour, O'Donohoe hastily prepared a handwritten deed purporting to convey Joan Thome's thirty acres to the corporation. O'Donohoe misstated the name of the corporation and failed to join Leon Thome as a grantor for the purpose of releasing his dower interest. It was not these mistakes, however, but other details surrounding the execution of the deed, that formed the basis for the committee's complaint.

Specifically, the deed recited that it was "[s]igned this 30th day of June, 1985" by Joan Thome. The acknowledgement executed by O'Donohoe as notary public also specified that Thome personally appeared before O'Donohoe on June 30, 1985, for the purpose of executing the deed on that date. The date, of course, was really November 13, 1985, and Joan Thome recorded the deed just ten minutes before judgment in favor of the Staceyville Lumber Company was entered against the Thomes.

Further facts will be detailed as they become pertinent to the parties' arguments.

II. *Arguments.* The committee claims that by preparing and notarizing the backdated deed, O'Donohoe willfully violated the following provisions of the Iowa Code of Professional Responsibility for Lawyers: EC 1–5 (a lawyer should maintain high standards of professional conduct); DR 1–102(A), (1), (3), (4), (5) and (6) (a lawyer shall not violate a disciplinary rule; engage in illegal conduct involving moral turpitude; engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; engage in any other conduct adversely reflecting on fitness to practice law); and DR 7–102(A)(1), (3), (4), (5), (6) and (7) (a lawyer shall not take action on behalf of a client that merely serves to harass or maliciously injure another; conceal or knowingly fail to disclose that which is required by law to be revealed; knowingly make a false statement of law or fact; create or preserve evidence known to be false; counsel or assist a client in conduct known to be illegal or false).

O'Donohoe's response to these allegations has four components. First, she contends that she deliberately dated the deed as she did, not for the purpose of misleading anyone, but to conform it to her understanding of the actual transaction between the parties. Second, she maintains that she fully intended to notarize the document using the actual date signed (November 13) but, in her haste, inadvertently carried the June date down to the acknowledgement. Third, she asserts that if the transfer of property to the farm corporation was not fraudulent (there being no evidence that the transaction was other than bona fide and for adequate consideration), then her careless preparation of the document to effect the transfer cannot be deemed fraudulent. Finally, she argues that her reputation as an attorney of honesty and integrity belies the suggestion that she would participate in a deceitful scheme to defraud a creditor.

Familiar rules guide our consideration of these conflicting arguments. The burden is upon the committee to prove its case by a convincing preponderance of the evidence. *Committee on Professional Ethics & Conduct v. Davidson,* 398 N.W.2d 856, 856 (Iowa 1987). This quantum of proof is greater than that required in a civil trial, but less than required to sustain a criminal conviction. *Committee on Professional Ethics & Conduct v. Hurd,* 375 N.W.2d 239, 246 (Iowa 1985). Our review of the evidence is de novc. Iowa S.Ct.R. 118.11. Though we are not bound by the commission's findings, we give them weight, especially when considering the credibility of witnesses. Iowa R.App.P. 14(f)(7); *see also In re Marriage of Webb,* 426 N.W.2d 402, 404 (Iowa 1988) (court defers to fact finder who "has the opportunity to observe the demeanor of the witnesses as they testify and to formulate an appropriate impression of the witnesses' credibility based on that demeanor").

This case turns on the credibility of witnesses. In support of its petition, the committee offered the testimony of attorney Michael Gross, at whose behest the complaint was filed. He is the attorney for the Staceyville Lumber Company. After filing an action to set aside the November 13 deed, he received a phone call from O'Donohoe inquiring about the deadline to answer the petition. Although he professed no independent recollection of their conversation, his handwritten memorandum of the call cryptically suggested that O'Donohoe told him the Thomes were in fact in her office on June 30 to sign the deed and that she did not know why they waited until November 13 to file it.

Before the commission, O'Donohoe not only adamantly denied having discussed these dates with Gross, she disputed the committee's proffered translation of Gross' memo. In its findings, the commission clearly rejected the committee's version and accepted O'Donohoe's, stating:

> The Commission believes the testimony of Respondent that she felt she was conforming the date of the deed to the minutes of the organizational meeting of her client's corporation formed earlier that year. The Commission further finds that her testimony that she acted under time pressure and without careful consideration of the circumstances explains the mistake she made in notarizing the deed with an incorrect date.

From our independent review of the record, we cannot quarrel with the commission's conclusion.

Contrary to O'Donohoe's assertion, however, her actions on November 13 are not entirely excusable. Even if we accept, as did the commission, that O'Donohoe mistakenly notarized the deed with an incorrect date, we are still left with her misrepresentation regarding the date on which the deed was executed by Joan Thome. By her own admission, this back-dating was a deliberate misstatement of the true facts that was not explained in the body of the deed.

As aptly observed by counsel for the committee, lawyers find themselves in disciplinary proceedings for a variety of reasons. Sometimes it is evil intent that gets a lawyer into trouble; sometimes it is merely a failure to recognize the significance of action deliberately taken. Here

that failure led Judith O'Donohoe to knowingly make a false statement of fact on a document filed for public record. A convincing preponderance of the evidence persuades us that her actions misled opposing counsel as well as the general public and thereby violated DR 1-102(4) and DR 7-102(5) of the Iowa Code of Professional Responsibility for Lawyers.

III. *Disposition.* We are convinced that O'Donohoe's actions fall far short of the committee's claim that she engaged in a deliberate scheme to defraud Thomes' creditors. Nevertheless, her conduct—both deliberate and inadvertent—adversely reflects on her fitness to practice law. *See* DR 1-102(6).

The commission viewed O'Donohoe's lapse in good judgment as an isolated incident in an otherwise exemplary career. We can reach no other conclusion from the record made before the commission. In this respect we find the case similar to *Committee on Professional Ethics & Conduct v. Roberts,* 312 N.W.2d 556 (Iowa 1981). There, a lawyer signed his client's name to a completed financial affidavit and presented it to the court in order to promptly obtain temporary support in a dissolution proceeding. Although the client's rights were not adversely affected, the signature was unauthorized and the court was thereby misled by the false affidavit. *Id.* at 557. Because we recognized that it is prejudicial to the administration of justice to use untruthful means to accomplish even a lawful purpose, we found Roberts violated our ethical standards. However, because of his otherwise excellent reputation for truth and veracity, we reprimanded him rather than imposing a more grave sanction. *See id.* at 557–58.

Like Roberts, Judith O'Donohoe sought only to zealously represent her clients' interests. But in doing so she departed from her usual course of honesty and straightforwardness and misled opposing counsel and the public with a poorly drawn and falsely dated deed. For that unethical behavior, we hereby reprimand her.

ATTORNEY REPRIMANDED.

All Justices concur except HARRIS and SNELL, JJ., who dissent.

HARRIS, Justice (dissenting in part).

I respectfully dissent from the majority selection of a sanction. It seems inescapable to me that the respondent deliberately attempted to mislead her clients' creditors by notarizing a document with the wrong date. The record is clear that she believed at the time that the date was critical to her clients' rights and to those of their creditors. On this record I cannot believe the incorrect date was placed there in error.

I disagree that the facts here square with those in *Committee on Professional Ethics & Conduct v. Roberts,* 312 N.W.2d 556 (Iowa 1981). In *Roberts* the misconduct was serious enough, but there was no attempt to mislead. The facts which were furnished in the forged affidavit were true and opposing counsel consented to the procedure. This case is closer to *Committee on Professional Ethics & Conduct v. Hurd,* 325 N.W.2d 386 (Iowa 1982), where, like here, there was an attempt to deceive and where we ordered a 60-day suspension. *Id.* at 390.

Under the circumstances, especially in view of respondent's otherwise unblemished record, I think a 90-day suspension would be appropriate.

SNELL, J., joins in this dissent.