452

COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Appellee,

v.

Richard C. BAUERLE, Appellant.

No. 90–580.

Supreme Court of Iowa.

Sept. 19, 1990.

Lee H. Gaudineer of Austin, Gaudineer, Austin, Salmons & Swanson, Des Moines, for appellant.

Charles L. Harrington, Des Moines, for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, LAVORATO, and ANDREASEN, JJ.

HARRIS, Justice.

This attorney disciplinary proceeding is before us on review of the report and recommendation of the grievance commission. It involves Richard Bauerle, a prominent attorney who has practiced law in Ottumwa, Iowa, since 1956. Bauerle has appealed from the commission's findings and vigorously disputes the recommended thirty-day suspension of his license to practice law. On our review we find flagrant ethical violations and order a longer suspension than that recommended.

Since the mid–1960s Bauerle represented Jon Kneen, a wealthy Ottumwa businessman. The services also involved Kneen's company, Al–Jon, Inc., a manufacturer of heavy equipment used in salvage and waste management. The ethical charges arise from Kneen's dealings with another business entity, Al–Jon Sales, in which Kneen had a major financial stake.

Al–Jon Sales was launched to gain a tax advantage. In 1980 Kneen considered the new business after consulting with his accountant and others about its tax advantages. He was told that income and loss items, including depreciation, would "flow out" to the individual partners and lower their individual income tax liability. The accountant told Kneen the papers would have to be drawn by an attorney.

In December 1981 Kneen thus consulted Bauerle regarding the preparation of a partnership agreement between Kneen and another person. The papers were drawn for the new company, showing an effective date of December 1, 1981. Bauerle mailed the papers to Kneen on January 18, 1982. Kneen's 1981 income tax returns were then prepared by the accountant to reflect the December 1, 1981, effective date.

Kneen was disappointed by the resulting computation because it showed a substantially higher tax liability than he had been led to anticipate. Upon consulting with his accountant Kneen was dismayed to learn that a recent tax law change required that depreciation be prorated when a partnership had been in existence for less than an entire year. Under preexisting law six months had been allowed for partial years.

Kneen reacted to his disappointment on April 19, 1982, by sending Bauerle a paper which he called a "Quick Note." It stated:

1. Retype your letter dated January 19, 1982, changing the date from January 19, 1982, to January 19, 1981.

2. Prepare some type of invoice from your firm that specifically charges us for preparing this partnership agreement; this invoice to be dated some time in March 1981.

3. Retype the front page of the original Partnership Agreement showing effective date to be January 1, 1981, as date the agreement was made. We will need the original and three copies. Find attached the original agreement.

Bauerle says he had not discussed any of these matters with Kneen, but admits he had his secretary prepare all three documents specified in the note. Bauerle made no attempt to interview Kneen to learn why he wanted the documents altered or backdated. He had in fact not written Kneen on January 19, 1981, to transmit any partnership agreement, nor had he performed any legal services for Al–Jon Sales Co. before March 1981. Bauerle admits that Kneen's requests were unusual and that he had never received similar requests from other clients.

Kneen was later indicted, tried, and convicted in federal court on several counts of income tax evasion. As it happened none of the convictions had to do with the matters we have related. Under a grant of immunity Bauerle testified in Kneen's trial. Bauerle testified truthfully and produced copies of all original and altered documents.

Another act of considerable importance involves a trade name certificate for Al–Jon Sales Co. which Bauerle prepared as a part of the original papers. The document bears signatures of Kneen and his partner. Acting in the capacity of notary public Bauerle certified that both partners subscribed and swore to the document in his presence on December 1, 1981. Neither did so at any time. Apparently the signed document was left with Kneen's secretary, and Kneen completed the notarization certificate later.

Bauerle argues in justification that none of the conduct complained of was intended for his own benefit, that, without realizing it, he was drawn into the sweep of a scheme which was Kneen's and not his own. The actions were taken, he says, long ago and only because he failed to stop and reflect on their implication.

We are altogether unimpressed by these justifications. The conduct was transparently unprofessional. It obviously violated fundamental ethics canons. *See* Iowa Code of Professional Responsibility DR 1–102(A)(4) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(6) (lawyer shall not engage in conduct that adversely reflects on his fitness to practice law). False statements of fact contained in documents prepared for clients qualify as misconduct under these canons. *Committee on Professional Ethics and Conduct v. O'Donohoe,* 426 N.W.2d 166, 169 (Iowa 1988).

Fundamental honesty is the base line and mandatory requirement to serve in the legal profession. The whole structure of ethical standards is derived from the paramount need for lawyers to be trustworthy. The court system and the public we serve are damaged when our officers play fast and loose with the truth. The damage occurs without regard to whether misleading conduct is motivated by the client's interest or the lawyer's own.

With all respect to the recommendation of our grievance commission, to which we are always indebted for dedicated public service, we cannot agree with the thirty-day license suspension which it recommended. The relatively short recommendation undoubtedly reflected the otherwise excellent record Bauerle earned during his years of practice. We too are impressed by Bauerle's past conduct and service. On the other hand the misconduct shown can only be described as inexcusable. We are not so naive as to believe an experienced lawyer could be ignorant of Kneen's purpose in demanding the falsified documents.

Neither do we take the false notarization lightly. It is suggested in defense of the incident that the practice of notarizing known signatures of absent persons is neither uncommon nor unnecessarily deceitful. We think such a practice can never be excused. It is manifestly unprofessional for a lawyer, acting as a notary public, to certify that persons who did not do so personally appeared and attested to a document. *See Committee on Professional Ethics and Conduct v. Seff,* 457 N.W.2d 924, 926–27 (Iowa 1990) (misconduct to falsely subscribe witness testimony); *Committee on Professional Ethics and Conduct v. West,* 387 N.W.2d 338, 342 (Iowa 1986) (misconduct and a misdemeanor for notary to misstate fact in acknowledgment on a conveyance).

Richard C. Bauerle's license to practice law is suspended indefinitely and shall not be reinstated for six months from the date of this opinion. This suspension applies to all facets of the practice of law. *See* Iowa Sup.Ct. R. 118.12.

LICENSE SUSPENDED.