Larry **CAMPBELL,** Appellant,

v.

**Donna E. SHALALA,** Appellee.

No. 93–1768.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 17, 1993.

Decided Jan. 25, 1994.

B.J. Jones, Fort Yates, ND, argued, for appellant.

Karen Schreier, U.S. Atty., Sioux Falls, SD, argued, for appellee.

Before LOKEN, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

HEANEY, Senior Circuit Judge.

## BACKGROUND

Larry Gene Campbell, a 49–year–old sheet metal worker, sustained a serious back injury when he fell from a high beam while installing skylights. He received medical and wage loss benefits pursuant to Minnesota workers' compensation law of $391 per week beginning on October 28, 1988, and continuing until October 23, 1989. Thereafter, he received nineteen additional weeks of wage loss benefits in the amount of $413 per week ending on March 5, 1990. It is agreed that these benefits were periodic benefits within the meaning of 42 U.S.C. § 424a.

In April 1989, Campbell had surgery on his back. He showed improvement as a result. In January 1990, the workers' compensation carrier notified Campbell that his temporary total disability benefits were going to be discontinued because the carrier believed that Campbell had obtained maximum medical improvement and thus temporary total benefits were no longer payable. Campbell immediately protested the discontinuance. The carrier and Campbell then agreed to mediate the dispute over workers' compensa-

tion benefits. Under the terms of the mediated agreement dated February 17, 1990: (1) temporary total disability benefits to Campbell would be continued to March 5, 1990; (2) on that date Campbell would receive a lump sum award of $27,935; and (3) in addition to the lump sum payment, the carrier would pay Campbell $77,000 in seventy-seven, consecutive, monthly payments of $1,000 each. To satisfy this obligation, the carrier purchased an annuity from Continental Casualty Company. The carrier explained the annuity as follows: [1]

> This amount of money is not a continuation of Mr. Campbell's Workers' Compensation claim. This claim has been closed out in accordance with Minnesota Statutes for any and *all Temporary Total Disability, Temporary Partial Disability, Permanent Partial Disability, Permanent Total Disability, Rehabilitation benefits, retraining benefits* and *death benefits*. The [carrier to] remain liable for work related medical expense.

Letter from CNA Insurance Companies, November 28, 1990 (emphasis added). The agreement further stipulated that in the event of the death of Campbell during the term of the agreement, all remaining monthly payments were to be made to Campbell's wife, or in the event of her death, to her estate. Campbell reserved the right to change the contingent payee at anytime.

On April 13, 1990, Campbell filed an application for social security disability benefits arising out of the injury to his back alleging an onset date of October 24, 1988. The application was finally denied after reconsideration on July 27, 1990. Campbell did not seek a review of this denial. However, during the summer of 1990, Campbell was diagnosed with cancer and underwent unsuccessful surgery. On October 1, 1990, he filed a second application for disability benefits based on his terminal cancer and was awarded disability benefits with an onset date of January 1, 1990.[2] On January 30, 1991,

---

1. The carrier's explanation appears to be consistent with the documents signed by Campbell at the time of the settlement.

2. Because of the waiting period provided for in 42 U.S.C. § 423(c)(2), Campbell was, however, not eligible for Title II benefits until June of 1990.

Campbell was notified that his monthly social security disability benefits would be reduced due to the receipt of workers' compensation benefits. Campbell requested that this decision be reconsidered. The Social Security Administration granted reconsideration and adhered to its position. It stated:

A review of your file shows that you received temporary total workers' compensation payments of $391.00 per week from October 28, 1988 through October 23, 1989, and $413.00 per week from October 24, 1989 through March 5, 1990. These weekly payments ended because of a mediation agreement settling your claim for benefits. Under this settlement, you received a lump sum payment of $27,935.00 plus 77 payments of $1000.00 per month beginning with April 1990 and continuing through August 1996.

The mediation agreement settled the portion of your workers' compensation claim which provided for periodic cash benefits such as further temporary total benefits, temporary partial or permanent total and/or partial benefits.

Therefore, it was a settlement in lieu of periodic benefits and must be used to compute the reduction of your Social Security benefits....

....

The proration of the lump-sum payment will end with June 17, 1991 plus another $264.00....

Beginning with July 1991, the reduction will be based on only the $1000.00 monthly payment. When this is deducted from the limit of $1232.00, $232.00 remains to be paid to you. After your protected increase is added, you will be entitled to a monthly benefit of $273.90 effective July 1991.

Notice of Reconsideration, June 30, 1991.

Campbell was dissatisfied with this decision and requested a hearing before an administrative law judge (ALJ). He contended that the monthly payments he received pursuant to the mediation agreement were not periodic benefits relating to his total or partial disability and that the lump sum payment of $27,935 he received from the workers' compensation carrier was not a substitute for a periodic benefit for total or partial disability. He further contended that the lump sum payment and subsequent annuity payments were payments to compensate him for a loss of function in his back rather than disability payments to compensate him for loss of ability to work due to his cancer. Campbell finally asserted that the offset provisions of 42 U.S.C. § 424a are not applicable when the benefits paid under the state program are not paid during a month in which the person was also eligible to receive Title II benefits, and he did not become eligible to receive these benefits until June 1990; thus the lump sum payment made to him in March of 1990 and two of the monthly payments made prior to June 1990 should not offset the Title II benefits. The ALJ rejected all of his arguments.

Campbell appealed the ALJ's decision to the Appeals Council, which refused to reconsider the ALJ's decision. Campbell then filed an action in the United States District Court for the District of South Dakota seeking judicial review of the Secretary's final decision. The Secretary filed a motion for summary judgment, and Campbell filed a cross-motion for the same. The district court, relying on *Munsinger v. Schweiker,* 709 F.2d 1212 (8th Cir.1983), held that because Campbell's settlement with the workers' compensation carrier was his sole remedy against his employer for his back injury, and in light of congressional intent to avoid duplicative payments, the Secretary's finding that the payments made by the workers' compensation carrier to Campbell under the mediation agreement constituted payment on account of disability is supported by substantial evidence on the record as a whole. The court went on to hold, however, that because Campbell did not become eligible to receive Title II benefits until June 1990, the lump sum payment in March 1990 and at least two of the $1,000 monthly payments could not properly be offset.[3]

3. The court reasoned that offset was improper because 42 U.S.C. § 424a(a) requires that a claimant's social security benefits be offset by *periodic* state disability benefits where the claimant was entitled to the state and federal benefits *for the same month. See* 42 U.S.C. § 424a(a).

The Secretary then moved to alter or amend the district court's judgment with respect to the lump sum payment and the $1,000 annuity payments made prior to Campbell's eligibility date for disability benefits. The district court granted the Secretary's motion and amended its judgment to provide that these payments could be offset against Campbell's social security disability benefits.[4] Campbell appeals the decision of the district court.

## ANALYSIS

Sections 424a(a) and (b) of 42 U.S.C. provide:

**(a) Conditions for reduction; computation**

If for any month prior to the month in which an individual attains the age of 65—

(1) such individual is entitled to benefits under section 423 of this title, and

(2) such individual is entitled for such month to—

(A) *periodic benefits* on account of his or her total or partial disability (whether or not permanent) under a workmen's compensation law or plan of the United States or a State, . . .

the total of his benefits under section 423 of this title for such month . . . shall be reduced [by a specified formula].

. . . .

**(b) Reduction where benefits payable on other than monthly basis**

If *any periodic benefit for a total or partial disability* under a law or plan described in subsection (a)(2) of this section is payable on other than a monthly basis (excluding a benefit payable as a lump sum except to the extent that it is a commutation of, or a substitute for, periodic payments), the reduction under this section shall be made at such time or times and in such amounts as the Secretary finds will approximate as nearly as practicable the reduction prescribed by subsection (a) of this section.

42 U.S.C. §§ 424a(a), (b) (1988) (emphasis added).

■ In *Munsinger*, we held that whether a payment received under a state workers' compensation scheme was a disability payment under section 424a was a federal question even if the conclusion under federal law conflicted with that of state law. 709 F.2d at 1217. We stated that the congressional policy behind section 424a was to eliminate duplication of benefits so that a disabled person would have an incentive to return to work or attempt to rehabilitate himself. *Id.* Accordingly, we must look to federal, not state, law to determine whether the offsets taken here were proper.[5]

■ As in *Munsinger*, the essential question is whether Campbell's lump sum payment and the $77,000 annuity payable at the rate of $1,000 per month were *periodic benefits* within the meaning of section 424a, and may thus be used to offset his Title II benefits. If they were not periodic benefits, then they cannot be used to offset his Title II benefits. An argument can certainly be made that the payments were not entirely periodic benefits because Campbell might have been able to establish that, at least in part, the lump sum payment and the annuity payments were compensation for the loss of bodily function as contrasted to a substitute for periodic payments. Moreover, it seems clear that rehabilitation, retraining benefits,[6]

---

**4.** Relying on section 424a(b), which applies to lump sum disability payments, the court held the offset was proper because section (b) contains no requirement that a lump sum state disability payment be made during the same month the claimant was entitled to social security disability benefits. *See* 42 U.S.C. § 424a(b).

**5.** The legislative history of section 424a is of little help because the parties agree that Campbell can

neither return to work nor attempt to rehabilitate himself. Thus we must resort to the plain words of the statute for the answer.

**6.** Rehabilitation and retraining benefits may have a component for continuing wage loss and a component to cover the third party costs involved in the process. The latter component would not be a periodic payment.

and death benefits are not periodic benefits within the meaning of section 424a. There is no evidence in the record, however, to show the extent to which, if any, the lump sum payment and the annuity were not substitutes for periodic payments.[7] The burden of proof was on Campbell to show what part of his workers' compensation settlement is not a substitute for periodic payments, *Black v. Schweiker*, 670 F.2d 108 (9th Cir.1982), and he failed to sustain that burden. We note, however, as did the Ninth Circuit, that "[w]e need not and do not hold that every compromise of a workers' compensation claim is a substitute for periodic payments within the meaning of 42 U.S.C. § 424a(b)." *Id.* 670 F.2d at 110.

▮ A second argument Campbell raises regarding the issue of whether his social security benefits can be offset by his lump sum and annuity payments, although creative, is contrary to the case law in this circuit. Campbell argues that because his state and federal benefits were awarded for different impairments (the former for his back and the latter for his lung cancer), his benefits were not duplicative. Specifically, he argues that had he not been stricken with cancer, he would have inevitably re-entered the job market thus gaining the benefits of his regular salary in addition to the benefits for the injury to his back. We rejected a similar argument in *Kananen v. Matthews*, 555 F.2d 667 (8th Cir.1977). In holding that section 424a requires an offset even if the benefits being paid under a workers' compensation program and Title II are for different disa-

bilities, we noted that "[i]t is the end result, not the cause, which governs." *Id.* at 670.

▮ Campbell's final argument that because he did not become eligible to receive Title II benefits until June 1990, the March lump sum payment of $27,935 and two monthly payments of $1,000 each cannot be used to offset his disability benefits is rejected for the reasons set forth in the district court's order amending its judgment.

## CONCLUSION

We conclude that the Secretary's decision to offset Campbell's Title II benefits by the lump sum and annuity payments he received under the settlement agreement he signed is supported by substantial evidence on the record as a whole. We further conclude that the Secretary's decision to offset Campbell's social security benefits by the lump sum payment he received prior to his eligibility for Title II benefits is supported by substantial evidence for the reasons stated by the district court.

---

7. Nor does the settlement agreement attempt to allocate the lump sum payment and the annuity between periodic and nonperiodic payments. In his testimony before the ALJ, Campbell stated that the money he received pursuant to the agreement was for the injury to his back, that he believed he had sustained a permanent loss to his back, and that the payment was not contingent upon his not being able to work in the future. Appendix at 76–80. He further testified that it was his understanding that he could return to any type of work he wanted to after he signed the mediation agreement. *Id.* at 81. He did not, however, attempt to quantify which payments were periodic within the statute and which were not.