# IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,

v.

**Karen R. ALEXANDER, Respondent.**

No. 97–2056.

Supreme Court of Iowa.

Feb. 18, 1998.

Norman G. Bastemeyer and David J. Grace, Des Moines, for complainant.

Sarah W. Cochran of Foss, Kuiken & Gookin, P.C., Fairfield, for respondent.

Considered by CARTER, P.J., and LAVORATO, SNELL, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

After investigation of a complaint by the Iowa Supreme Court Board of Professional Ethics and Conduct (board), the board filed a complaint in four counts with the Grievance Commission of the Supreme Court (commission) against attorney Karen R. Alexander. Following a hearing on the complaint, the commission found Alexander had violated disciplinary rules of the Iowa Code of Professional Responsibility for Lawyers in her representation of clients in two divorce cases. The commission recommended a thirty-day suspension of her license. Upon our review of the record, we conclude Alexander's conduct demands a more severe sanction and therefore order her license be suspended indefinitely, with no possibility of reinstatement for 180 days.

## I. *Background Facts and Proceedings.*

Following graduation from law school in 1989, Alexander was admitted to practice as an attorney in the courts of this state. She practiced with an attorney in Chariton, Iowa for approximately one year before taking a position with the Wapello County Attorney's office in Ottumwa, Iowa. She was discharged from this position after working in the office for approximately one year. She then practiced in the office of an attorney in Ottumwa before opening her own office in November 1993. A few months later she began sharing an office with her husband, R.G. Starken, while both maintained their solo practices.

### A. Facts—Counts I, II, and III.

In October 1992, Alexander began representing Araceli "Sally" Goode (Sally) in a dissolution of marriage action. The petitioner, Mark Goode (Mark), was represented by attorney Jeffrey Lipman of Des Moines. Following a hearing on the petition for dissolution a decree was entered on April 26, 1993.

In April 1994, Lipman wrote Alexander expressing concern that his client was being threatened with contempt for failure to pay taxes. Alexander responded by letter, dated May 2, urging that Mark had failed to comply with the terms of the decree as it related to the payment of income taxes, penalties, and interest. On December 12 Alexander wrote a letter to Mark demanding he pay his share of the tax liability as ordered in the dissolution decree. No copy of this letter was furnished to Lipman. Thereafter, Alexander filed an application for contempt alleging Mark had willfully failed to pay the taxes.

At a hearing on the application for contempt, Alexander offered a copy of a letter addressed to Lipman as proof of her demand for the payment of the taxes. In support of the admission of this document, Alexander made a professional statement to the court that the letter had been mailed on the date as shown on the letter, April 23, 1993.

At another contempt hearing in October 1995, the parties discussed resolution of visitation and child support problems. Judge Dan F. Morrison suggested when the parties reached an agreement they should prepare an order that contained their agreement for him to sign. Counsel for both parties stated the judge expected them to present a mutually agreeable order.

On October 27, Lipman sent Alexander a letter containing a proposed modification decree. The letter requested she review the decree and contact him. Alexander prepared an order for modification showing in its caption "as per joint stipulation" and had the proposed decree delivered to the court on October 30. The modification order prepared by Alexander was signed and filed by Judge Richard J. Vogel on October 31.

### B. Facts—Count IV.

Alexander represented Kevin Garret (Kevin) in a dissolution of marriage action brought by his spouse, Heather Garret (Heather). Heather was represented by attorney Michael Vinyard. On July 19, 1995, Alexander filed eleven affidavits in support of her client's application for temporary custody of the parties' two children. Included was her written professional statement relating a conversation with Nan Hyde, a child abuse investigator for the department of human services. Hyde had been appointed by the court to make an investigation but had not completed her investigation at the time set for the hearing. The professional statement declared Hyde "advised [Kevin and his parents] not to allow Heather to have contact with the children until the investigation was completed." The court ordered that custody continue until the filing of the investigative report. After receiving the report, the court entered an order granting temporary custody of the children to Kevin.

Heather filed an application for reconsideration of the order. She alleged Alexander had submitted a series of materially false, misleading, and inaccurate statements to the court. These included Alexander's professional statement and her August 3, 1995 letter to Heather's counsel reporting contact by a Bloomfield police officer. The letter stated Heather did not have appropriate car seats for the children and that the Bloomfield police officer said he would not allow the children to be taken without them.

At a hearing on the application for reconsideration Hyde denied she had stated to Alexander that Heather should be denied contact with the children until the investigation was completed. Hyde's thought was that neither party should have contact with the children alone. Alexander stated to the court that she had requested Judge Morrison to amend her written professional statement to add the word "alone" at the time the professional statement was offered. As to the letter, Bloomfield police officer Morrow testified he did not tell Alexander that Heather could not take the children without car seats.

### C. Commission Findings.

After a hearing on the complaints, the commission found Alexander had violated: (1) DR 7–110(B) (count I) in submitting to the court an order for modification of the decree, without the presence of or notice to opposing counsel, in the context that a court would conclude that counsel for both sides had agreed to the order when such was not the case; (2) DR 7–102(A) (count III) in offering at trial a letter dated April 23, 1993 that had been prepared by Alexander but never sent in order to gain advantage for her client; and (3) DR 1–102(A)(4) (count IV) in knowingly making misstatements in her professional statement and her letter of August 3, 1995 for the purpose of gaining an advantage for her client. The commission found the board had failed to prove Alexander had violated DR 7–104(A) (count II) by writing directly to Mark on December 12, 1994. The commission concluded Alexander had carried her role as an advocate for her client too far.

If no appeal is taken from the commission's report, we review the record made before the commission. Iowa Sup.Ct. R. 118.10. Upon such review we may impose a lesser or greater sanction than that recommended by the grievance commission. *Id.*

### II. *Scope of Review.*

The scope of review in lawyer discipline proceedings is de novo. Iowa Sup.Ct. R. 118.10, .11. The burden of proof in such a proceeding is a convincing preponderance of the evidence. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Mayer,* 570 N.W.2d 647, 648 (Iowa 1997).

> This quantum of proof is greater than that required in a civil trial, but less than required to sustain a criminal conviction. .... Though we are not bound by the commission's findings, we give them weight, especially when considering the credibility of witnesses.

*Committee on Prof'l Ethics & Conduct v. O'Donohoe,* 426 N.W.2d 166, 168 (Iowa 1988).

### III. *Disciplinary Rule Violations.*

### A. Count I.

DR 7–110(B) provides in part:

In an adversary proceeding, a lawyer shall not communicate, or cause another to communicate, as to the merits of the cause with a judge ... before whom the proceeding is pending, except: (1) In the course of official proceedings in the cause. (2) In writing if a copy is promptly delivered to opposing counsel.... (3) Orally upon adequate notice to opposing counsel.... (4) As otherwise authorized by law.

Here, Alexander prepared and submitted an order for modification of the Goode dissolution decree stating the parties had agreed to the modification order. The order was signed by Judge Vogel and filed on October 31. On November 22, Mark's attorney filed a petition to vacate the order alleging the representation that the order was based on a joint stipulation and agreement of the parties was false. Neither Mark nor his attorney had seen or approved the proposed order at the time it was presented to the court.

In response to the petition to vacate, Alexander prepared and filed a resistance. In the resistance she stated: (1) both she and Lipman notified Judge Morrison that an agreement for modification of the dissolution decree had been reached, subject to Sally's consent, (2) Lipman filed a proposed order with the clerk of court on October 27 and on that same date he mailed a copy to her that she received on October 31, (3) she also received a copy of Lipman's proposed order in her mailbox at the clerk's office on October 30, (4) she then prepared an order that was faxed to Lipman, and (5) later she presented her order to the court and both her order and Lipman's order were before the court for review. She denied she had any ex parte conversation with Judge Morrison or Judge Vogel.

Soon after, Alexander and her client approved an order, that was signed by the court, modifying the divorce decree, dismissing the contempt proceedings against Mark, and declaring the modification decree filed on October 31 null and void "as it is agreed that this order was filed in error."

At the hearing before the commission, Alexander explained her reasons for submitting the modification and the circumstances surrounding it. She testified she saw Lipman's proposed order on the judge's desk, and asked the judge if she could review it. She examined it and then went back to her office and prepared an order that expressed her understanding of the parties' agreement. Because she was suffering from a headache, she asked her husband to take the order to Judge Morrison so the judge could choose between the two orders. Her husband testified he delivered the order to the judge.

Contrary to statements contained in Alexander's resistance, the court file does not reflect Lipman's proposed order was received by or filed with the clerk of court. There was no record of a fax of the Alexander order to Lipman. Lipman testified he did not fax or mail the proposed order to the clerk of court or any other office in the courthouse. The judges involved had no recollection of the events. The commission found Lipman did not send or fax a proposed order to the court. The commission found Alexander's explanation of the submission of the order was not credible.

### B. Count II.

DR 7–104(A) provides in part:

During the course of representing a client a lawyer shall not: (1) communicate ... on the subject of the representation with a party known to be represented by a lawyer in that matter except with the prior consent of the lawyer representing such other party or as authorized by law.

Alexander testified at the hearing before the commission that she sent the December 12, 1994 letter to Mark because she did not know Lipman was his attorney regarding the tax issue. In the closing paragraph of her letter to Lipman on May 2, 1994, she stated:

I was contacted by another attorney in this matter. If you are no longer representing Mr. Goode please advise me as soon as possible. I will look forward to hearing from you within the next two days.

The commission found the board failed to meet its burden of proof to show Mr. Goode was "known to be represented" by Lipman at the time the letter was mailed. We reach the same conclusion.

## C. Count III.

DR 7–102(A) provides in part: "In the representation of a client, a lawyer shall not: ... (5) knowingly make a false statement of fact, (6) participate in the creation of evidence when the lawyer knows or it is obvious that the evidence is false."

Alexander offered into evidence her letter to Lipman dated April 23, 1993, asking that his client, Mark, pay taxes through the clerk's office as per the decree. It was offered to show Mark had failed to comply with the court order after receiving a request to comply.

At the hearing before the commission, Alexander testified the letter was sent to Lipman but the date was incorrect. She testified it was mailed to Lipman in October or November, 1993. She explained the letter had been retrieved from the computer just minutes before the contempt hearing, and she admitted the date on the letter was a mistake but denied the letter was a false document. Lipman testified he never received the letter. The commission found the letter had not been sent to Lipman but was created by Alexander for the purpose of introduction as an exhibit at the contempt hearing.

## D. Count IV.

DR 1–102(A) provides in part: "In representing a client a lawyer shall not: ... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

At the hearing on Heather's application for reconsideration of the order for temporary custody Alexander testified she corrected the professional statement at the time it was presented to Judge Morrison by adding the word "alone." Vinyard denied Alexander had corrected the statement. Judge Morrison had no recollection of the correction. No correction was indicated on the exhibit.

Alexander also wrote a letter reporting that she had been contacted by a Bloomfield police officer stating he would not allow visitation unless the children were furnished car seats. Alexander testified that the statement was not totally correct but that she had heard a tape recording of what the officer had stated to others and that the letter was basically accurate.

The commission found the statements contained in Alexander's professional statement and in the August 3, 1995 letter were submitted to support her client's position on contested matters and were knowingly false.

## IV. *Findings.*

We find Alexander's submission to the court of the modification order which incorrectly indicated it was an order agreed upon by the parties without notifying opposing counsel violated DR 7–110(B) and DR 1–102(A)(4). We also find her offer in a contempt hearing of a falsely dated letter and her professional statement that included a false statement of fact as to the date of its mailing violated DR 7–102(A). Finally, we find the false statements contained in Alexander's professional statement and her letter reporting contact by a Bloomfield police officer were conduct involving dishonesty or misrepresentation in violation of DR 1–102(A)(4).

## V. *Sanctions.*

False statements of fact contained in documents prepared by an attorney for clients violate fundamental ethics canons.

Fundamental honesty is the base line and mandatory requirement to serve in the legal profession. The whole structure of ethical standards is derived from the paramount need for lawyers to be trustworthy. The court system and the public we serve are damaged when our officers play fast and loose with the truth. The damage occurs without regard to whether misleading conduct is motivated by the client's interest or the lawyer's own.

*Committee on Prof'l Ethics & Conduct v. Bauerle,* 460 N.W.2d 452, 453 (Iowa 1990).

We have recognized:

A lawyer has a very special responsibility for candor and fairness in all his dealings with a court. Absent mutual trust and confidence between the judge and a lawyer—an officer of the court— judicial process will be impeded and the administration of justice frustrated.

*Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Plumb*, 546 N.W.2d 215, 217–18 (Iowa 1996) (citation omitted). Each disciplinary rule violation committed by Alexander is a grave and serious breach of professional ethics. Where there are multiple violations of our disciplinary rules, enhanced sanctions may be imposed. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Humphrey*, 551 N.W.2d 306, 308 (Iowa 1996).

We therefore suspend Karen R. Alexander's license to practice law in Iowa indefinitely, with no possible reinstatement for 180 days from the date of this opinion. Costs of this action are assessed against Alexander in accordance with Iowa Supreme Court rule 118.22.

**LICENSE SUSPENDED.**