### IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,

v.

### Sheldon M. GALLNER, Respondent.

### No. 00–1247.

Supreme Court of Iowa.

Jan. 18, 2001.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Roger J. Kuhle, West Des Moines, and Joseph D. Thornton, Council Bluffs, for respondent.

CADY, Justice.

The Board of Professional Ethics and Conduct charged Sheldon M. Gallner with engaging in conduct in violation of the Code of Professional Responsibility involving misrepresentation, excessive attorney fees, an improper fee arrangement as a reward for the referral of business, and endorsement of a client's name on a check without authorization. The Grievance Commission recommended Gallner be reprimanded and admonished for engaging in various counts of misrepresentation. It recommended the other claims be dismissed. On our review, we find Gallner violated numerous provisions of the Code of Professional Responsibility, and we suspend his license to practice law.

## I. Background Facts and Proceedings.

Sheldon Gallner practices law in Council Bluffs. He is an experienced lawyer and practiced with his brother until recent years. Gallner primarily practices in the area of workers' compensation and is recognized for his expertise in the area. He has practiced for more than twenty-five years. He was the president of the Iowa Association of Workers' Compensation Attorneys at the time of the proceedings. Gallner was reprimanded in 1994 for advancing living expenses to clients.

The evidence produced at the hearing before the Commission revealed multiple acts of misconduct. The thrust of the violations focused on the various times Gallner misstated the amount of his fee for representing injured workers in workers' compensation claims in letters written to the Social Security Administration office in Council Bluffs. On several occasions, Gallner informed the Social Security Administration office his attorney fee for representing a client in a workers' compensation case was greater than the amount he charged his client. On another occasion, Gallner never charged a fee for representing an injured worker in a claim for uncontested weekly healing-period benefits, but informed the Social Security Administration office that a fee had been charged in a bogus amount. In total, Gallner wrote at least six such letters over a period of ten years.

The Social Security Administration used the information supplied by Gallner to determine whether to limit benefits to injured workers who received both social security disability benefits and workers' compensation benefits.[1] The Social Security Administration deducts the amount of attorney fees from the amount of workers' compensation benefits to determine whether to limit social security disability benefits.[2] By reporting exaggerated attorney fees to the Social Security Administration, Gallner enabled some of his clients to receive more social security disability benefits than they would have been entitled to under the law.

---

1. The Social Security Administration limits the total benefits (social security disability and workers' compensation) of a disabled worker to eighty percent of the worker's pre-injury earnings. *See* Robert E. Francis, *Social Security Disability Claims—Practice and Procedure* § 2:11, at 13 (1983) (The offset is designed to prevent the worker from receiving combined social security and workers' compensation benefits in excess of eighty percent of usual earnings.). This is done to eliminate duplication of benefits and provide a disabled worker with an incentive to return to

work. *Campbell v. Shalala,* 14 F.3d 424, 427 (8th Cir.1994).

2. In determining whether to limit the disability insurance benefits to an individual who also receives workers' compensation benefits, the Social Security Administration considers only the net workers' compensation benefits received. In determining net workers' compensation benefits, the Social Security Administration deducts the actual amount of legal expenses incurred. *See* 20 C.F.R. § 404.408 (2000).

Gallner offered many reasons to justify his actions. He claimed the offset law was confusing and permitted a lawyer to report the fee that could have been charged by the attorney instead of the actual fee charged. He also claimed that he began to follow the practice after talking to other lawyers who believed it was permissible to report a fee not actually received. Gallner offered testimony at the hearing from an attorney who opined that it was permissible for a lawyer to utilize the actual fee for workers' compensation purposes and a larger fee for the purposes of the Social Security Administration. The Board offered expert testimony to the contrary.

Gallner also challenged the motives of those responsible for initiating the ethics complaint. One of these people was a former client who also brought an unsuccessful malpractice action against Gallner. Another was his brother.

The evidence at the hearing also addressed allegations that Gallner charged two clients excessive fees on various occasions and, on another occasion, returned a fee to a client as a reward for the referral of clients to his office. There was further evidence that Gallner signed a name of a client on the back of a check made payable to the client and Gallner without authorization from the client. Gallner promptly realized the mistake and informed his client. The client was called into the office, and the matter was resolved.

The Commission found some of the letters written by Gallner to the Social Security Administration on behalf of clients misstated his fee. It concluded these letters violated DR 7–102(A)(5) (knowingly making false statements on behalf of a client). The Commission found that two letters written in 1985 and one letter written in 1993 were violations of the Code. In these letters, Gallner stated he received or took a fee in a specific amount or a percentage of a specific amount of the recovery. The amount of the fee, however, was false. The Commission found that other letters written in 1994 and 1995 may have

been misleading, but were not specific enough to constitute misstatements. In one letter, Gallner stated he had a "contract to take 25%" of the weekly compensation. In another letter, Gallner stated he had a contract that entitled him to twenty-five percent of the weekly benefit amount. The Commission found these letters did not contain misstatements because Gallner did not specifically state the fee was taken.

The Commission further found the evidence did not support a finding that Gallner charged excessive fees or returned a fee to a client as a reward for the referral of business. Finally, the Commission found Gallner mistakenly signed his client's name on the back of a check, but his conduct did not violate DR 9–102(B)(1).

The Commission recommended Gallner be publicly reprimanded for writing the false letters and privately admonished for writing the misleading letters. It recommended the other counts be dismissed.

## II. Scope of Review.

■ Our review is de novo. Ct. R. 118.10. We give respectful consideration to the recommendations of the Commission, but ultimately decide the appropriate discipline under the specific facts of each case. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Beckman*, 557 N.W.2d 94, 95 (Iowa 1996). The misconduct must be proven by a convincing preponderance of the evidence. *Id.*

## III. Violations.

■ The applicable federal regulations clearly provide that the actual legal expenses incurred by a disabled worker in obtaining workers' compensation benefits are deducted from the amount of workers' compensation benefits received by the worker to determine any offset of social security disability benefits. *See* 20 C.F.R. § 404.408(d) (2000) ("[a]mounts paid or incurred, or to be incurred" for legal expenses are excluded from the computation

of reduced workers' compensation benefits so long as they reflect "the actual amount of [legal] expenses already incurred or a reasonable estimate"). In each letter Gallner wrote to the Social Security Administration, he misstated the amount of the fee. In two of the letters, the representations were indirect, but clearly enough to constitute false representations. The effect of each letter written by Gallner was "to mislead rather than to inform." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Smith,* 569 N.W.2d 499, 501 (Iowa 1997). Moreover, Gallner wrote the letters with the intent that the Social Security Administration rely upon the false representations. Consequently, we reject any claim that the false statements by Gallner resulted from confusion or mistake. Even if Gallner believed it was permissible under federal law to deduct attorney fees in an amount he could have charged his client, he nevertheless misstated the amount of his fee to the Social Security Administration office. Gallner misstated the facts to help his clients receive more benefits than they were entitled to receive. A fair consideration of all the evidence reveals no confusion or mistake, but design and purpose.

We conclude this conduct engaged in by Gallner violated DR 1–102(A)(4), (5), and (6). This same conduct also violated DR 7–102(A)(5). The letters written by Gallner not only involved dishonesty and misrepresentation, but were also prejudicial to the administration of justice and adversely reflected on the fitness to practice law. The letters also constituted false statements of fact.

██ We agree with the Commission that the evidence concerning the excessive fees and the return of a fee to a client does not support a finding of a violation of the Code by a preponderance of the evidence. Although the circumstances described by the evidence were suspicious, the evidence was too conflicting and uncertain to support the finding of a violation. Furthermore, the evidence concerning the endorsement of a check without authorization or an indication of the representative capacity did not support a violation of DR 9–102(B)(1). Although Gallner signed the client's name, he did so by mistake. After realizing the mistake, he notified the client to explain it. Gallner failed to indicate his representative capacity in signing the check, but realized his mistake after signing the client's name and did not proceed to note his representative capacity after knowing the client's signature was mistakenly made. Under these circumstances, no violation of DR 9–102(B)(1) occurred.

## IV. Discipline.

██ The sanction to result in an attorney disciplinary action rests with the particular facts of each case. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Carr,* 588 N.W.2d 127, 129 (Iowa 1999). In determining the sanction under the circumstances of each case, we consider the nature of the violations, "the need for deterrence, protection of the public, maintenance of the reputation of the bar," and the violator's fitness to practice law. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lemanski,* 606 N.W.2d 11, 14 (Iowa 2000).

██ In considering these factors in this case, it is apparent that Gallner engaged in a pattern of factual misstatements over an extended period of time. Normally, a pattern of misconduct gives rise to enhanced sanctions. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lesyshen,* 585 N.W.2d 281, 288 (Iowa 1998). The pattern of conduct in this case also involved an element of deceit. In *Committee on Professional Ethics & Conduct v. Bauerle,* 460 N.W.2d 452 (Iowa 1990), we said:

Fundamental honesty is the base line and mandatory requirement to serve in the legal profession. The whole structure of ethical standards is derived from the paramount need for lawyers to be trustworthy. The court system and the

public we serve are damaged when our officers play fast and loose with the truth.

*Bauerle,* 460 N.W.2d at 453.

 Gallner was also disciplined in the past. His prior disciplinary action is properly considered as an aggravating circumstance in this case. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Clauss,* 530 N.W.2d 453, 455 (Iowa 1995). Moreover, the prior ethical violation involved prohibited acts by Gallner for the purpose of helping clients, as in this case. It is also proper to consider in this case that Gallner is an experienced lawyer who practices extensively in the area of workers' compensation. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Wagner,* 599 N.W.2d 721, 730 (Iowa 1999) (attorney's experience in the practice of law is an aggravating factor to consider). These factors all point to the imposition of sanctions more severe than those recommended by the Commission.

The Commission considered a variety of factors in the mitigation of sanctions. These factors included the existence of confusion and competing legal opinions of the propriety of the conduct, the motivation of the accusers, the lack of personal greed, the passage of time, and the lack of harm. In our consideration of these factors, we find little support for mitigation of sanctions.

 In determining the existence of a violation in this case, we rejected the notion that Gallner acted out of confusion or in response to erroneous advice from others. Moreover, there was no confusion over the actual false statements made by Gallner in the letters to the Social Security Administration. Even if he erroneously believed the fee he could have charged the client could be used as a deduction, the amount of the fee he told the Social Security Administration he charged was false and misleading. He purposely misstated the amount of his fee. Nevertheless, ignorance of the law or erroneous advice does

not excuse a breach of ethics by a lawyer. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Evans,* 537 N.W.2d 783, 785 (Iowa 1995) (finding attorney's alleged unfamiliarity with the probate code to be an unpersuasive argument, as well as evidence of his unfitness to practice law); *Comm. on Prof'l Ethics & Conduct v. Zimmerman,* 354 N.W.2d 235, 237–38 (Iowa 1984) (ignorance of the law is never a defense, especially for an attorney holding himself out as informed on a particular matter). It is also unimportant that Gallner's accusers may have been motivated to report his conduct by animosity or ill feelings. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sunleaf,* 588 N.W.2d 126, 127 (Iowa 1999). Similarly, it is unimportant that Gallner's clients may not have received more benefits than they were entitled to receive in some instances because of the false letters. Gallner wrote the letters in an effort to obtain more benefits than his clients were entitled to receive, and the failure to achieve the ultimate goal does not mitigate the wrongful attempt. Additionally, conduct motivated by an attempt to benefit a client does not mitigate or excuse the making of false statements. *See Bauerle,* 460 N.W.2d at 453. Finally, although some of the conduct occurred as far back as 1985, the passage of "[t]ime is only a mitigating factor when it is accompanied by evidence of changes that reflect [upon the attorney's] current fitness to practice law." *Comm. on Prof'l Ethics & Conduct v. Hall,* 463 N.W.2d 30, 36 (Iowa 1990). In this case, Gallner committed unethical conduct as late as 1995.

We believe the sanction in this case should be no less than the sanction imposed in *Bauerle,* 460 N.W.2d at 453–54. In that case, a lawyer altered and backdated partnership documents, prepared a backdated fee invoice, and notarized known signatures in the absence of the persons. *Id.* at 453. We indefinitely suspended the lawyer's license to practice law with no possible reinstatement for six months. *Id.* at 454.

Based on all the circumstances of this case, we indefinitely suspend the license of Sheldon M. Gallner to practice law with no possible reinstatement for six months following the filing of this opinion. The suspension shall apply to all aspects of the practice of law. *See* Ct. R. 118.12. Any application for reinstatement shall be governed by Ct. R. 118.18. Costs are assessed to Gallner. *See* Ct. R. 118.22.

**LICENSE SUSPENDED.**

McGIVERIN, S.J.,* participates in place of LARSON, J., who takes no part.