IN RE: Karen Alexander STARKEN,
Arkansas Bar ID # 89066

03-777                                          122 S.W.3d 21

Supreme Court of Arkansas
Opinion delivered September 25, 2003
[Substituted opinion on denial of rehearing delivered
October 23, 2003]

*R. T. Starken*, for appellant.

No response.

PER CURIAM. Karen R. Alexander, now Karen R. Starken, was first licensed to practice law in Arkansas in 1989. In 1990, Ms. Starken moved to the State of Iowa where she had obtained a license to practice law. Ms. Starken was also licensed in the State of Missouri. In 1994, Ms. Starken failed to pay her annual license fee to the clerk of the Arkansas Supreme Court. Pursuant to Arkansas's Rules Governing Admission to the Bar Rule VII, Ms. Starken's license was automatically suspended from the law practice for failure to pay her bar fees. In 1994, she married R.T. Starken who is admitted to practice law in Arkansas and who is an appointed district court judge in Sharp County.

In 1998, Ms. Starken was suspended a second time from practice in Arkansas due to her failure to meet the requirement for continuing legal education (CLE). That same year, her license was suspended a third time, by reciprocity, based on her indefinite suspension from the practice of law by the Iowa Supreme Court. The Iowa Supreme Court, on review of a report from the Iowa Grievance Commission, had indefinitely suspended Ms. Starken's license with no possible reinstatement earlier than 180 days. The

court found that, following two complaints, Ms. Starken had in fact violated several disciplinary rules of the Iowa Code of Professional Responsibility for Lawyers and that her conduct warranted a more severe sanction than the thirty-day suspension recommended by the Grievance Commission. The Iowa court said in part:

> We find Alexander's submission to the court of the modification order which incorrectly indicated that it was an order agreed upon by the parties without notifying opposing counsel violated DR 7-110(B) and DR 1-102(A)(4). We also find her offer in a contempt hearing of a falsely dated letter and her professional statement that included a false statement of fact as to the date of its mailing violated DR 7-102(A). Finally, we find the false statements contained in Alexander's professional statement and her letter reporting contact by a Bloomfield police officer were conduct involving dishonesty or misrepresentation in violation of DR 1-102(A)(4).
>
> . . . .
>
> Each disciplinary rule violation committed by Alexander is a grave and serious breach of professional ethics.
>
> . . . .
>
> We therefore suspend Karen R. Alexander's license to practice law in Iowa indefinitely, with no possible reinstatement for 180 days from the date of this opinion.

*Iowa Supreme Court Bd. of Professional Ethics and Conduct v. Alexander,* 574 N.W.2d 322, 326-27 (1998).[1] Ms. Starken was disbarred in Missouri because of the Iowa suspension.

On March 14, 2000, Ms. Starken was reinstated to the practice of law by the Iowa Supreme Court. On June 26, 2002, Ms. Starken filed her character application and sought reinstatement to the Arkansas Bar under Rule XIII of the Rules Governing Admission to the Bar. When she did so, she paid her past-due bar

---

[1] Six other complaints filed with the Iowa Board of Professional Ethics and Conduct were dismissed.

fees. In that application, she asserted that her Arkansas reciprocal suspension had only been for 180 days. She also revealed that she had filed two bankruptcies (one in 1988 and one in 1998) and that she had been sued for delinquent student loans. Based upon a review of the character questionnaire and other information, the Chair of the Board of Law Examiners was unable to reach a decision regarding Ms. Starken's eligibility. Accordingly, a three-member hearing panel was appointed, and a hearing was held on January 25, 2003.

At the hearing, the evidence officer, Mr. Chris Thomas, provided a recitation of Ms. Starken's suspensions to the panel of the Board of Law Examiners. He noted that she had been granted reinstatement by the Continuing Legal Education board from her second suspension for failing to meet the CLE requirements. In regards to her reciprocal suspension based on the Iowa suspension, Mr. Thomas informed the panel that the Arkansas Committee on Professional Conduct was awaiting the action of the Board of Law Examiners regarding her suspension for nonpayment of bar fees before taking further action.[2]

At the hearing, Ms. Starken presented evidence that her past-due bar fees had been tendered to the Board of Law Examiners. She then put on evidence of her character. Ms. Starken testified that her license to practice law in Iowa had been reinstated and that she is currently in good standing there. She further testified that she moved back to Arkansas about five years ago and was currently serving as the program director for the Court Appointed Special Advocate (CASA) program in Arkansas' Third Judicial District. She settled with her husband in Cherokee Village. Ms. Starken advised the panel that her work with CASA sparked her desire to be readmitted to the practice of law in Arkansas.

Ms. Starken added that she had been disbarred in Missouri but that she planned to reapply for admission there, following her attempt at readmission in Arkansas. She stated that although she and her husband had filed for bankruptcy in 1998 due to large medical bills and no health insurance, they had restructured their

---

[2] When the Arkansas Committee on Professional Conduct was advised that the Board of Law Examiners had voted to reinstate Ms. Starken, it removed her suspension from practicing law.

financial circumstances.[3] In response to questions regarding the repayment of her student loans (over $40,000 with costs and penalties), Ms. Starken testified that she and her husband were paying them off and would continue to do so. Finally, on questioning from the panel regarding her suspension by the Iowa Supreme Court, Ms. Starken stated that at no time did she ever intentionally mislead a court, nor did she ever intentionally fabricate a document. She stated that she has restructured her life and is now ready to practice law again.

In support of her application for reinstatement, Ms. Starken submitted letters supporting her application from every lawyer and judge in Sharp County. She admitted at the hearing that some of those lawyers and judges may not have been totally familiar with her wrongdoing in Iowa.

In her testimony before the panel, Ms. Starken made excuses for her dishonest behavior in Iowa largely premised on her busy law practice and her inadequate supervision of her legal personnel. She did state, however, that this was her fault since supervision of her office was her responsibility.

On May 29, 2003, the Board of Law Examiners issued Findings and Conclusions where, by a vote of seven to four, it concluded that Ms. Starken should be readmitted to the practice of law in Arkansas because she had "established present mental and emotional stability and good moral character beyond a preponderance of the evidence." The motion for reinstatement was then filed in this court by Ms. Starken pursuant to Rule XIII of the Arkansas Rules Governing Admission to the Bar.

There is no question but that our indefinite suspension of Ms. Starken's license to practice in Arkansas was related to her indefinite suspension in Iowa and that after she moved to Arkansas, Iowa reinstated her to practice. We note, however, that the Iowa Supreme Court described her conduct as a "grave and serious breach of professional ethics," which involved false dates, false statements, and conduct involving dishonesty or misrepresentation. Moreover, it is clear to us that Ms. Starken's financial affairs have been in disarray at times over the past fifteen years and that she is still in the throes of trying to pay off her debt. And while she

---

[3] Mr. and Ms. Starken listed total claims for creditors holding unsecured nonpriority claims at $252,837. Mr. Starken advised the panel that some of the claims were duplicative.

has support from the bench and bar in Sharp County, the extent of her past dishonesty illustrates a pattern that is hard to justify or excuse.

■■ Section 17(B) of our Procedures Regulating Professional Conduct defines "serious misconduct" as that conduct involving dishonesty or misrepresentation which carries with it a sanction "terminating or restricting the lawyer's license to practice law." In addition, Section 24 of our Procedures Regulating Professional Conduct reads in pertinent part:

> A. No attorney who has been disbarred or surrendered his or her law license in this State shall thereafter be readmitted to the Bar of Arkansas except upon application made to the State Board of Law Examiners in accordance with the Rules Governing Admission To The Bar, or any successor rules, and the approval of the Arkansas Supreme Court.

> B. Provided, however, that application for readmission to the Bar of Arkansas shall not be allowed in any of the following circumstances:

> . . . .

> (3) Any of the grounds found to be the basis of a disbarment or any grounds presented in a voluntary surrender of law license are of the character and nature of conduct that reflects adversely on the individual's honesty or trustworthiness, whether or not the conviction of any criminal offense occurred.

■ Though these two sections relate to our Procedures Regulating Professional Conduct, Rule XIII of the Rules Governing Admission to the Bar states:

> In addition to meeting all other requirements of the Rules Governing Admission to the Bar, every applicant for admission to practice by examination and every applicant for readmission or reinstatement of license to practice must be of good moral character and mentally or emotionally stable.

Honesty, unquestionably, is essential to one's moral character. Because of Ms. Starken's several dishonest acts in Iowa and her unstable financial circumstances, we decline to reinstate her to the practice of law at this time.

Motion denied.